**HIBBARD BROWN & CO., INC.
and Richard P. Brown**

v.

**ABC FAMILY TRUST, et al.**

**Civ. No. JFM–91–1691.**

United States District Court,
D. Maryland.

Sept. 20, 1991.

George Beall, Baltimore, Md., and Richard Horowitz, New York City, for plaintiffs.

John Isbister, Baltimore, Md., for defendants.

## MEMORANDUM

MOTZ, District Judge.

Hibbard Brown & Co., Inc. and Richard P. Brown (collectively "Hibbard Brown")[1] have instituted this action against 218 of Hibbard Brown's former customers seeking an injunction to stay arbitration proceedings instituted by former customers ("the investors") against Hibbard Brown before the National Association of Security Dealers. The underlying dispute between the parties arises out of limited partnership interests and promissory notes which were issued by one H. Ellis Ragland, Jr., and sold by Hibbard Brown to the investors. The issue presented here is whether the investors are precluded from taking the dispute to arbitration because of an earlier court action which they instituted against Hibbard Brown.

### I.

The investors instituted suit against Hibbard Brown on December 22, 1989 in the United States District Court for the Northern District of Georgia, asserting a variety of claims arising out of the Ragland transactions. While the case was pending in Georgia, Hibbard Brown filed numerous motions, including a motion to dismiss, a motion to disqualify the investors' counsel and a motion to transfer the action to this court. The investors filed an opposition memorandum, strenuously opposing each of these motions. While the motions were pending, the investors sought discovery by serving notices to take depositions and a document request. Hibbard Brown moved for a stay of this discovery. The motion was opposed by the investors.

On August 27, 1990 Judge Freeman of the Northern District of Georgia entered an order granting Hibbard Brown's motion to transfer. Judge Freeman further ruled that decision on the remaining pending motions should be deferred and decided by this court.

On October 16, 1990, the investors filed a motion to stay the court action in favor of arbitration proceedings which they stated they intended to file before the NASD.[2] This was the first time that the investors had indicated any intention to seek arbitration. On or about October 22, 1990 the investors submitted their arbitration claim. Several days thereafter, on October 26, 1990, counsel met with me for a scheduling conference. During the course of the conference counsel for Hibbard Brown re-

---

1. Peter F. Hibbard, another principal of Hibbard Brown is not a plaintiff in these proceedings but has agreed to be bound by its outcome. He is a party to the earlier court actions and the arbitration proceedings which are the subject of this opinion.

2. It is undisputed that § 12(a) of the Code of Arbitration Procedure of the NASD conferred the right upon the investors to demand that their dispute with Hibbard Brown be arbitrated.

quested the opportunity not only to respond to the investors' motion to stay but also to submit supplemental memoranda on the motion to dismiss which they had filed. Counsel for the investors took the position that the stay motion should be addressed before any supplemental memoranda on the dismissal motion were filed. Although I realized, of course, that granting the stay motion would moot the dismissal motion before me, I directed that supplemental memoranda on the dismissal motion be filed because (1) I wanted to avoid unnecessary delay in the event that I denied the stay motion and (2) it seemed to me that any additional work done on the dismissal motion might well be of value in the arbitration proceedings were I to grant the stay motion.

The scheduling conference was held on the morning on October 26th. That afternoon counsel for the investors filed a notice of voluntary dismissal of the court action, electing to pursue their arbitration claim before the NASD. Subsequently, as the NASD proceedings began to go forward, Hibbard Brown sought an injunction against their prosecution in the New York state courts. That action was dismissed for lack of personal jurisdiction over the investors. Hibbard Brown then instituted the present action in this court.

## II.

■ It has become "black letter" law that, in light of the strong federal policy in favor of arbitration, a party is not deemed to have waived its right to arbitration by filing a court action unless the other party has been prejudiced in the interim. *See, e.g., Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc.,* 817 F.2d 250, 252 (4th Cir.1987); *Kramer v. Hammond,* 943 F.2d 176 (2d Cir.1991). I have two difficulties with this conventional formulation. First, it does violence to the common meaning of the term "waiver"—the voluntarily relinquishment of a known right. Absent evidence that a party is ignorant of its right to arbitrate, it seems self-evident that by filing a court action instead of instituting arbitration proceedings, a party has voluntarily chosen to relinquish its right to arbitrate. Second, it is not only prejudice to the opposing party but also the public interest in preventing the manipulation of the judicial process which may defeat a party's attempt to arbitrate after filing a court action. Although these two factors may ordinarily coincide, they are analytically distinct. Therefore, I think that a more accurate formulation of the applicable rule is as follows: "In light of the strong federal policy in favor of arbitration, a party which has waived its right to arbitrate by filing a court action may revoke its waiver unless (1) an opposing party would be prejudiced by the revocation, or (2) the revocation would result in an improper manipulation of the judicial process."

■ In any event, applying either the conventional test or my modification of it here, I find that the investors have not waived (or revoked their waiver of) their right to arbitrate. Hibbard Brown relies upon three factors to establish the prejudice which it has allegedly suffered. First, it contends that it would be prejudiced by virtue of the fact that it expended $160,000 in defense of the earlier court action. Presumably, most of these fees were incurred in conducting factual investigation and researching legal issues concerning the viability of the investors' claims. These fees would have been incurred regardless of the forum in which the investors' claims are prosecuted and thus do not constitute prejudice.[3]

Second, Hibbard Brown asserts that it would be subjected to the risk of inconsistent verdicts if it were required to proceed both in arbitration and in separate court actions against third parties not subject to arbitration. The Supreme Court has expressly held that this risk does not justify

---

**3.** Hibbard Brown may have incurred some fees, particularly those relating to its motion for transfer, which were peculiar to the court action. However, Hibbard Brown has not chosen to rely upon this limited portion of its fees as its ground for prejudice and has presented no evidence concerning them. Moreover, as discussed *infra,* Hibbard Brown is, in effect, gaining the benefit of the transfer order entered by Judge Freeman.

the staying of arbitration proceedings. *See Moses H. Cone Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19–21, 103 S.Ct. 927, 939, 74 L.Ed.2d 765 (1983). Third, Hibbard Brown contends that it might have made different tactical decisions than it did when the court action was instituted in Georgia. The frustration of Hibbard Brown's counsel in this respect is understandable. If they had known that the investors were harboring the thought of seeking arbitration if the action were transferred to Maryland, they might have chosen to prosecute the case vigorously in Georgia to establish precisely the type of prejudice necessary to constitute a "waiver" by the investors of their right to arbitrate. However, this is a matter of pure speculation, and Hibbard Brown must live with the tactical decisions which it made.

The remaining question is whether permitting the investors to arbitrate after having first pursued the court action would be to tolerate an improper manipulation of the judicial process. Hibbard Brown argues that counsel for the investors played "fast and loose" with this court by not advising me at the scheduling conference on October 26, 1990 that it was contemplating dismissal of the court action. Counsel for investors represent that it was only after the scheduling conference, when my decision to permit briefing on all of the open issues made them realize the substantial costs which continued prosecution of the court action would involve, that they decided to dismiss the court action in favor of arbitration. I accept this representation. In any event, the ruling which I made at the scheduling conference on the briefing issue is not the type of substantive ruling which raises any serious concern about improper manipulation.

■ A more serious issue is presented by the fact that when the investors filed their arbitration claim with the NASD, they requested that the arbitration proceedings be conducted in Atlanta. In making this request the investors, in effect, attempted to undermine Judge Freeman's decision to transfer venue from Georgia to Maryland. Although a venue question is procedural rather than substantive in nature, it is a matter of significance, and Judge Freeman's order is entitled to deference. However, the interest in preventing the investors from attempting to circumvent that ruling can be vindicated by a measure less drastic than enjoining the investors from proceeding with the arbitration. At oral argument counsel for the investors stated that they were willing to accept Judge Freeman's ruling and have the case arbitrated in Maryland. It may be that the investors are concerned that the NASD will direct that the arbitration be held in New York and that their counsel's concession at oral argument is itself a tactical ploy designed to have the proceedings conducted in the venue which is their second choice. I express no views as to whether the arbitration should be conducted in Maryland or New York. However, I direct the parties to advise the NASD that (unless Hibbard Brown now wants the proceedings conducted in Georgia) I request that the arbitration proceedings be conducted at a place other than Georgia in order to uphold the integrity of Judge Freeman's transfer ruling. I hope and expect that the NASD will honor this request.[4]

4. Hibbard Brown has moved for an order directing that, in the event that the investors are not enjoined from proceeding with the arbitration, their counsel in that proceeding be disqualified. The counsel in question are Georgia counsel who (1) were involved in the initial investigation of the claims against Hibbard Brown (2) engaged in pre-suit negotiations with Hibbard Brown, (3) instituted the Georgia court action and (4) appeared *pro hac vice* after the transfer of the Georgia action here. As a threshold matter, the investors contend that I have no jurisdiction to disqualify counsel in the arbitration proceeding. That may or may not be the case. I am of the view that a disqualification question must ultimately be subjected to judicial review. However, it is not clear to me whether this review should be conducted by (1) the court which (after the arbitration proceedings have ended) is asked to enforce the arbitral award, (2) a court sitting in the jurisdiction where counsel are admitted to practice or (3) a court (such as this one) whose jurisdiction has been properly invoked in connection with a pre-arbitration issue. Assuming, however, that I do have power to decide the question, I would not exercise that power. The asserted grounds for disqualification—improper solicitation of clients, alleged violations of securities laws in

A separate order is being entered herewith effecting the rulings made in this memorandum.

### ORDER

For the reasons stated in the memorandum entered herein, it is this 20th day of September 1991

ORDERED

1. Plaintiffs' request for a preliminary and permanent injunction against defendants is denied;

2. Plaintiff's motion for disqualification of counsel in the arbitration proceedings is denied; and

3. This action is dismissed.

connection with communications to potential clients, improper formation of a charitable corporation and conflicts of interest—are ones which (1) are more appropriately addressed in other contexts and (2) can best be resolved after a full factual record on the underlying merits of the dispute have been established in the arbitration proceedings.