2000 ME 156

## SAGA COMMUNICATIONS OF NEW ENGLAND, INC. d/b/a WMGX

v.

## Lori VOORNAS.

Supreme Judicial Court of Maine.

Submitted on Briefs March 6, 2000.

Decided Aug. 10, 2000.

James G. Goggin, Christopher McLaughlin, Verrill & Dana, Portland, for the plaintiff.

Robert W. Kline, Portland, for the defendant.

Panel WATHEN, C.J., and CLIFFORD, RUDMAN, SAUFLEY, ALEXANDER, and CALKINS, JJ.

WATHEN, C.J.

¶1 Plaintiff Saga Communications of New England, Inc. d/b/a WMGX ("Saga") appeals from an order entered in the Superior Court (Cumberland County, *Mills, J.*) denying its motion to stay the proceedings and compel arbitration. The underlying action involves a claim that Lori Voornas breached her agreement not to compete with Saga and that she misappropriated Saga's trade secrets. Saga argues on appeal that it was entitled to arbitration pursuant to the employment agreement between it and Voornas and that the Superior Court erred in finding that it waived that right. We agree that Saga has waived arbitration and we affirm the judgment.

¶2 The relevant facts may be summarized as follows: From at least August of 1996 when she signed a three-year contract of employment, Lori Voornas was an on-air radio announcer and co-host of the morning show broadcast by Saga's radio station WMGX in Portland. Voornas's contract came up for renewal in the summer of 1999, but she declined to renew, choosing instead to leave Saga's employment on August 31st. Voornas's separation triggered a noncompete agreement contained in her employment contract. Under the terms of this agreement, Voornas was precluded for a period of six months from performing services as an on-air announcer for any radio station in a 75-mile radius that was in competition with Saga with regard to format or targeted audience. A list of competing stations was attached to the contract, though the noncompetition agreement applied to any competing station whether listed or not. The noncompete provision was to expire on March 1, 2000.

¶3 Shortly after leaving Saga and well before March 1st, Voornas began employment with Citadel Communications Corpo-

ration,[1] a communications company that owns several radio stations in Portland that compete with Saga and WMGX.[2] Voornas, however, did not immediately return to the air, but instead undertook general promotional activities for Citadel. When Saga learned in October about Voornas's employment and activities, it commenced the present suit against her.

¶ 4 From the first filing, this case has been litigated at a frenetic pace. On the day that Saga filed its complaint, it also moved for a temporary restraining order and preliminary injunction, and asked that its motion be expedited. At that time, Saga sought only injunctive relief for the alleged breach of the noncompetition agreement. On November 3rd, the court ordered an expedited schedule; the next day, Saga amended its complaint to add a second count alleging misappropriation of trade secrets. Though Saga requested damages and injunctive relief for this count, it continued to ask only for injunctive relief on its noncompete claim. The day after Saga amended its complaint, Voornas filed her opposition to Saga's request for injunctive relief and moved to dismiss. A hearing was scheduled for November 8th, following which the court denied Saga's request for injunctive relief, ruling that Saga had failed to show a likelihood of success on the merits and that it had failed to show it would be irreparably harmed absent an injunction.[3]

¶ 5 Ten days after this hearing, Voornas moved for a summary judgment. Saga answered her motion on the merits nearly

a month later, asking, in part, that the court grant a summary judgment against Voornas. At around the same time, Saga filed a notice of deposition for Voornas, with the deposition scheduled for December 27th. On December 20, 1999--approximately two months before the expiration of the noncompete period--Voornas appeared on-air for WCLZ (now WPNT), a radio station that is owned by Citadel and that was one of the competitors listed in the noncompetition agreement. That same day, Saga filed a renewed motion for temporary restraining order and preliminary injunction. A hearing was held three days later, and the court denied Saga's motion, again ruling that Saga had failed to show it would suffer irreparable injury.

¶ 6 It was only at this point in the proceedings that Saga first indicated its intention to invoke the binding arbitration clause contained in Voornas's contract. Saga demanded that Voornas voluntarily submit their dispute to arbitration pursuant to her employment agreement. Voornas refused, and Saga responded with yet another expedited motion, this time seeking to stay the proceedings and compel arbitration pursuant to 14 M.R.S.A. § 5928 (1980). Voornas objected to the demand for arbitration, and on January 26th, the court denied Saga's motion. Saga now appeals from this order pursuant to 14 M.R.S.A. § 5945(1)(A) (1980) ("appeal may be taken from an order denying an application to compel arbitration under section 5928").[4]

1. Though Saga repeatedly based parts of its arguments before the Superior Court on Citadel's actions and "unjust enrichment." Citadel has never been made a party to this action.

2. Several Citadel stations were listed as competitors under the noncompete agreement.

3. The court also denied Voornas's motion to dismiss at that hearing.

4. Section 5945 is an exception to the final judgment rule. *See Maine Cent. R. R. Co. v. Bangor & Aroostook R. R. Co.,* 395 A.2d 1107,

1112–13 (Me.1978). Saga's appeal was expedited upon its request, but due to Saga's delay in requesting arbitration, we were unable to decide this case prior to the expiration of the six month non-compete period, which expired on March 1st. Saga did not file its notice of appeal until February 9, 2000, and though we granted Saga's request that the appeal be expedited, even under that expedited schedule, the reply briefs were due one day prior to the expiration of the non-compete period, with the case scheduled for conference six days later.

¶ 7 We review the denial of a motion to compel arbitration for errors of law and for facts not supported by substantial evidence in the record. *See Iowa Grain Co. v. Brown,* 171 F.3d 504, 509 (7th Cir.1999); *Orthopedic Physical Therapy Ctr., P.A. v. Sports Therapy Ctr., Ltd.,* 621 A.2d 402 (Me.1993). Although motions to compel arbitration usually revolve around the question of "the existence of the agreement to arbitrate," the parties agree that under the contract between Voornas and Saga their dispute should have been arbitrated. *See* 14 M.R.S.A. § 5928(1) (1980). Voornas, however, argues that Saga waived its contractual right to demand arbitration by repeatedly and persistently attempting to gain its remedy in the courts.[5] When, as in the present case, the facts upon which waiver is based are not in dispute, the determination of whether a party has waived its contractual right to arbitration is a question of law which we review de novo. *See Doctor's Assoc., Inc. v. Distajo,* 107 F.3d 126, 130 (2nd Cir.1997) (*Distajo II*).

¶ 8 Saga puts forth two arguments in opposition to a finding of waiver. First, Saga argues that the plain language of the contract prevents a finding of waiver no matter how extensive its litigation of the dispute. In support of this provision, Saga points to Rule 37 of the National Rules for the Resolution of Employment Disputes (National Rules), published by the AAA and incorporated into the arbitration clause by reference. Subsection (a) of this rule states that: "No judicial proceeding by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate." This provision is unambiguous and its interpretation is therefore a question of law that we review de novo. *See Town of Lisbon v. Thayer Corp.,* 675 A.2d 514, 516 (Me.1996).

¶ 9 While it is true that "every clause of a contract [should] be given meaning if possible," this rule of construction does not compel the result urged by Saga. *See Orthopedic Physical Therapy Ctr.,* 621 A.2d at 403. Other courts that have reviewed this clause have refused to find that it creates the type of blanket protection urged by Saga. *See S & R Company of Kingston v. Latona Trucking, Inc.,* 159 F.3d 80, 86 (2nd Cir.1998) (citing cases). These courts have noted that this clause is intended to protect the arbitration right of the party that seeks provisional application to the courts in order to preserve the status quo. *See id.* In this sense, however, this clause "does not alter the ordinary analysis undertaken to determine if a party has waived its right to arbitration" because under that analysis litigation to maintain the status quo pending arbitration would not be held to constitute a waiver even in the absence of the "no waiver" clause. *See id.* at 86. Furthermore, granting the "no waiver" clause the broad reach that Saga suggests would only serve to undermine a court's ability to control the proceedings before it while potentially allowing "the losing party to test[] the water before taking the swim." *See id.* (quoting *Home Gas Corp. v. Walter's of Hadley, Inc.,* 403 Mass. 772, 532 N.E.2d 681, 685 (1989)); *Doctor's Assoc., Inc. v. Distajo,* 66 F.3d 438, 456 n. 12 (2nd Cir. 1995) (*Distajo I*).

¶ 10 Saga next argues that, even if it could waive the arbitration clause, there can be no finding of waiver under the facts of the present case. The Federal Arbitration Act, codified at 9 U.S.C. § 1 *et seq.,* governs the current case. The FAA applies to "contract[s] evidencing a transaction involving commerce" and requires that in such cases, arbitration clauses "shall be valid, irrevocable, and enforce-

---

**5.** Saga does not dispute that the Superior Court was the proper forum for a determination of whether it has waived arbitration. *See Doctor's Assoc., Inc. v. Distajo,* 66 F.3d 438, 456 (2nd Cir.1995) (holding that courts may decide the issue of waiver when the party seeking to compel arbitration has already participated in litigation on the dispute); *Jones Motor Co. v. Chauffeurs Local No. 633,* 671 F.2d 38, 43–44 (1st Cir.1982).

able, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (1999). "[T]he creation of an employment relationship which involves commerce is a sufficient 'transaction' to fall within section 2 of the Act." *Dickstein v. duPont*, 443 F.2d 783, 785 (1st Cir.1971); *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *Bernhardt v. Polygraphic Co. of America*, 350 U.S. 198, 200–01, 76 S.Ct. 273, 100 L.Ed. 199 (1956) (holding FAA did not apply where employee was not engaged in activities that affect interstate commerce). In the present case, Voornas was hired to perform as a radio announcer; such a contract affects interstate commerce and the FAA applies. *See, e.g., Maye v. Smith Barney, Inc.*, 897 F.Supp. 100, 105 (S.D.N.Y.1995) (holding employees in Smith Barney's purchasing department to be in an employment relationship involving commerce).

¶ 11 The FAA created a strong federal policy in favor of arbitration; where it applies, it preempts all state rules that are applicable only to arbitration clauses, leaving only those rules generally applicable to contracts. *See KKW Enterprises, Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp.*, 184 F.3d 42, 50 (1st Cir.1999). Indeed, in evaluating an arbitration agreement, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."[6] *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). As a consequence, waiver is not to be lightly inferred. *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 25 (2nd Cir.1995); *Shinto Shipping Co. v. Fibrex Shipping Co.*, 572 F.2d

1328, 1330 (9th Cir.1978). In evaluating whether waiver has occurred, each case must be evaluated upon its specific facts; there are no bright line rules. *See S. & R. Co. of Kingston*, 159 F.3d at 83; *Menorah Ins. Co. v. INX Reinsurance Corp.*, 72 F.3d 218, 222 (1st Cir.1995).

¶ 12 Although courts that have addressed the issue of waiver are not in agreement over all elements required to find a waiver, there is universal agreement that the party now seeking to compel arbitration must, at the least, have undertaken a course of action inconsistent with its present insistence upon its contractual right to arbitration. *See, e.g., P.P.G. Indus., Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 109 (2nd Cir.1997). "[A] party may, by engaging in litigation, implicitly waive its contractual right to arbitrate." *Navieros Inter-Americanos, S.A. v. M/V Vasilia Express*, 120 F.3d 304, 316 (1st Cir.1997). The relevant question is whether the parties have litigated "substantial issues going to the merits" of the arbitrable claims without any indication that, despite the dispute's presence in court, a party intends to exercise its contractual right to arbitration. *See Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 326 (5th Cir.1999); *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 887 (2nd Cir.1985); *Sweater Bee by Banff, Ltd. v. Manhattan Indus. Inc.*, 754 F.2d 457, 463 (2nd Cir. 1985). Such litigation does not need to involve dispositive motions, though many courts finding waiver have noted the presence of such motions. *See S. & R. Co. of Kingston*, 159 F.3d at 84; *Caribbean Ins. Serv., Inc. v. American Bankers Life Assurance Co. of Florida*, 715 F.2d 17, 19–20 (1st Cir.1983) (holding that party waived its right to arbitration by entering into a stipulation providing for an expedited trial); *Com-Tech Assoc.*, 938 F.2d at 1576 (holding that party opposing arbitration was forced to litigate a partial summary

6. Maine has adopted a similar strong policy favoring the enforcement of arbitration clauses. *See J. M. Huber Corp. v. Main-Erbauer,* *Inc.*, 493 A.2d 1048, 1050 (Me.1985); *Westbrook Sch. Comm. v. Westbrook Teachers Ass'n*, 404 A.2d 204, 207–08 (Me.1979).

judgment motion filed contemporaneously with the motion to compel arbitration). Essentially, the party now seeking to compel arbitration must have demonstrated a "preference for litigation" over arbitration. *See P.P.G. Indus., Inc.*, 128 F.3d at 109.

¶ 13 The filing of a complaint with a request for temporary injunctive relief is not necessarily the litigation of substantial issues going to the merits. This is particularly true when the request for injunctive relief is contemporaneous with the demand that the court compel arbitration. *See Com-Tech Assoc. v. Computer Assoc. Int'l, Inc.*, 938 F.2d 1574, 1577 (2nd Cir.1991); *Erving v. Virginia Squires Basketball Club*, 468 F.2d 1064, 1066 (2nd Cir.1972). Indeed, in most cases, a preliminary injunction or like measure "preserve[s] the status quo until trial can result in a final determination of the rights of the parties." 2 FIELD, MCKUSICK & WROTH, MAINE CIVIL PRACTICE § 65.2 at 108 (2d ed. 1970).

¶ 14 Saga argues that its motions for injunctive relief were nothing more than attempts to maintain the status quo. This characterization is disingenuous. On the facts of this case, both of Saga's motions for injunctive relief, but particularly its second motion, litigated substantial issues going to the merits of its breach of contract claim against Voornas. Saga did not request damages for the breach. Thus, the primary issue before the court was whether Voornas's activities constituted a breach of the noncompete agreement that should be enjoined. Saga's second motion

was not filed until the end of December,[7] with only two months remaining in the non-compete period, thus effectively litigating the propriety of enjoining Voornas during that time period.

¶ 15 The two motions for injunctive relief did not, however, litigate substantial issues going to the merits of Saga's trade secrets claim against Voornas. This count was not mentioned in the motions, and, in any case, a request for an injunction *would have* preserved the status quo of the trade secrets count pending trial by preventing the alleged misappropriation until the propriety of Voornas's actions could be determined. Our review of the record reveals, however, that Voornas moved for a summary judgment on both counts of the complaint well before Saga's request for arbitration.[8] Saga answered Voornas's motion on the merits while again failing to indicate that Voornas was defending herself before the wrong tribunal. Indeed, in responding to this motion, Saga requested that the court enter a summary judgment against Voornas. In the particular context of the present case, Saga has litigated substantial issues going to the merits of both its claims just as surely as if it had moved for a summary judgment itself.[9] Saga voluntarily choose to initiate the present action in the courts. It did so without informing Voornas that she should conserve her defense lest she soon be required to change forums. Voornas's motion for a summary judgment was

7. Although Saga claimed that the Superior Court invited a renewed motion if Voornas went on the air, the record does not reveal such a request.

8. Voornas also filed a motion to dismiss; this motion litigated substantial issues going to the merits of the breach of contract claim, *see Teltronics Serv., Inc. v. LM Ericsson Telecomm., Inc.*, 642 F.2d 31, 34 (2nd Cir.1981), but not to the merits of the trade secrets claim: Voornas's motion was filed the day after Saga's amended complaint and did not address the newly added trade secrets count.

9. The filing of these motions would necessarily appear in a different light if Voornas and

not Saga had filed the complaint in this case. Saga would then be unwillingly brought to court, and Voornas could not escape arbitration merely by filing a substantive motion. Likewise, Voornas could not be said to have been reasonable in her expenditure of time and effort on a motion for summary judgment if Saga had attempted to compel arbitration from the beginning of the case. The crux of the present case, and the essential difference from those situations, is that Saga made a free choice of forum to resolve its dispute and only sought to escape that choice after significant litigation had ensued.

a reasonable response of a diligent and vigorous defense given no notice that, in attempting to gain a swift disposition of this dispute, she was expending her energy in the wrong forum. Saga's actions are inconsistent with its current insistence upon its arbitration rights.

¶ 16 Saga argues, however, that Voornas has not been prejudiced and, absent that prejudice, there can be no waiver even if it demonstrated a preference for litigation over arbitration. It is true that a majority of the federal courts have required a demonstration of prejudice as the *sine qua non* of waiver.[10] *See Menorah Ins. Co. v. INX Reinsurance Corp.*, 72 F.3d 218, 221 (1st Cir.1995); *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 25 (2nd Cir.1995); *Fraser v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 817 F.2d 250, 252 (4th Cir.1987); *Lawrence v. Comprehensive Business Serv. Co.*, 833 F.2d 1159, 1164–65 (5th Cir.1987); *Ritzel Communications, Inc. v. Mid-American Cellular Tel. Co.*, 989 F.2d 966, 969 (8th Cir. 1993); *Hoffman Constr. Co. of Oregon v. Active Erectors and Installers, Inc.*, 969 F.2d 796, 798 (9th Cir.1992); *Morewitz v. West of England Ship Owners Mut. Protection and Indemnity Ass'n*, 62 F.3d 1356, 1366 (11th Cir.1995). Other courts have adopted a "totality of the circumstances" test[11] in evaluating waiver; under this test, prejudice is considered, but waiver can be found even in its absence. *See Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1489 (10th Cir. 1994); *National Found. for Cancer Research v. AG Edwards & Sons, Inc.*, 821 F.2d 772, 777 (D.C.Cir.1987).

¶ 17 It is unnecessary in the present case to determine whether waiver could be found even absent prejudice as we are unable to agree with Saga that Voornas has not been prejudiced. "[P]rejudice ... refers to the inherent unfairness—in terms of delay, expense, or damage to a party's legal position—that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." *Distajo II*, 107 F.3d at 134.

> Prejudice can be substantive, such as when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration, or it can be found when a party too long postpones his invocation of his contractual right to arbitration, and thereby causes his adversary to incur unnecessary delay and expense.

*Kramer v. Hammond*, 943 F.2d 176, 179 (2nd Cir.1991). Although delay alone, or expenses that would have also been incurred in arbitration, are not enough to support a finding of prejudice, *see Sweater Bee by Banff, Ltd.*, 754 F.2d at 463; *Hibbard Brown & Co. v. ABC Family Trust*, 772 F.Supp. 894, 896 (D.Md.1991), prejudice can be found even though only a short time has passed before arbitration is demanded; the proper focus is on the effect of the delay upon the party opposing arbitration. *See American Express Fin. Advisors, Inc. v. Zito*, 45 F. Supp.2d 230, 234 (E.D.N.Y.1999); *Navieros Inter-Americanos, S.A.*, 120 F.3d at 316 (holding a delay of a month "long and prejudicial" where expedited schedule meant delay "lasted from the filing of the complaint to the eve of trial").

---

**10.** Though this is the majority position, there are differences of opinion regarding how this requirement is approached; the First Circuit has recently questioned whether prejudice may be merely one of several factors, whereas the Fifth Circuit, in addition to requiring that the non-movant show prejudice, also requires that party to overcome a presumption against a finding of waiver. *See Menorah*, 72 F.3d at 221; *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 577 (5th Cir.1991).

**11.** The Seventh Circuit stands on its own in holding that the commencement of the litigation process creates a rebuttable presumption that waiver has occurred; prejudice is then examined to determine whether the presumption has been rebutted. *See Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390–91 (7th Cir.1995).

¶ 18 Saga indicated its intention to change forums for the first time in January, approximately two and a half months after it filed the complaint in this case. Though the time was short on the calendar, it was long and prejudicial in terms of its effect upon Voornas and her legal position. In those two and a half months, the parties labored under an expedited schedule, producing as many filings as usually occur over a more protracted time period. In addition to defending Saga's two motions, Voornas litigated a motion to dismiss and a motion for summary judgment, neither of which would have been necessary had Saga been timely in its demand for arbitration.

¶ 19 Furthermore, Saga's breach of contract claim was significantly impaired by the denial of its second motion for injunctive relief; at that point, it was unlikely that the Superior Court could act in time to grant injunctive relief during the noncompete period. We need not now decide whether Saga could impress upon the court the necessity of granting it injunctive relief beyond the noncompete period except to note that "[h]istorically, the Maine courts have taken a conservative attitude toward injunctions, holding the injunction to be 'an extraordinary remedy only to be granted with utmost caution when justice urgently demands it and the remedies at law fail to meet the requirements of the case.'" ANDREW M. HORTON & PEGGY L. McGEHEE, MAINE CIVIL REMEDIES § 5.1, at 5-2 to 5-3 (1991) (citing R. WHITEHOUSE, EQUITY PRACTICE § 563 (1900), *quoted in Bar Harbor Banking & Trust Co. v. Alexander*, 411 A.2d 74, 79 (Me.1980)). Saga therefore asks through its request for a new forum that it be allowed to revive a weakened claim, thus forcing Voornas to relinquish her current favored position in this dispute. The strong federal policy in favor of arbitration was not intended to provide litigants with successive opportunities to prevail through continued revisitation of the same issue in different forums, particularly when those litigants are running from an unfavorable result in the courts. *See Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir.1995).

¶ 20 Finally, Saga's own appellate brief demonstrates that Voornas would be prejudiced by compelling arbitration at this time. Saga was aware of the imminent expiration of the noncompete period when it filed its appeal and was concerned that the passage of March 1st might render its appeal moot. *See, e.g., Halfway House, Inc. v. City of Portland*, 670 A.2d 1377, 1380 (Me.1996). Saga therefore argued that an arbitral panel would have the power to extend the contractual noncompete period should it determine that Voornas's conduct warranted the injunctive remedy Saga so assiduously seeks.[12] Were it not for Saga's attempt to first test the judicial waters before seeking an arbitral forum, however, there would be no need to discuss an arbitrator's ability to grant an extension of the noncompete period. Had Saga demanded arbitration from the beginning of this action, almost four months would have remained before the expiration of the noncompete period. Voornas would now be faced with a possible arbitral extension of the noncompete time period solely because of Saga's own delay in seeking to enter that forum. That Saga found the courts less congenial than it had hoped is not sufficient reason to force Voornas into a forum that Saga now believes is more pliable to its wishes than the one it initially and voluntarily entered. Saga has chosen its forum and may not now seek to escape the consequences of that decision.

The entry is:

Judgment affirmed.

---

12. Because we conclude that Saga has waived its right to arbitrate, we assume without deciding that the arbitrator could issue the relief Saga requests.