STATE OF MAINE                                      SUPERIOR COURT
CUMBERLAND, ss.                                     CIVIL ACTION
                                                    DOCKET NO. CV-07-16

XWAVE NEW ENGLAND CORP.,

        Plaintiff
        v.                                          ORDER ON MOTION
                                                    FOR TEMPORARY
                                                    RESTRAINING ORDER

JOEL MCLEAN,

        and

MICHAEL PRATT,

        Defendants


        Before the Court is Plaintiff XWave New England Corp.'s ("XWave")

motion for a temporary restraining order pursuant to M.R. Civ. P. 65 barring

Defendants Joel McLean and Michael Pratt ("Defendants") from providing their

services to former XWave clients as well as barring Defendants from using

confidential information obtained while employed by XWave in support of their

independent business venture.

## BACKGROUND

        For purposes of ruling on the present motion, the facts apparent from the

submissions of the parties are as follows. XWave is an information technology

company that employed Defendants as full-time salaried network engineers

from May 22, 2000 through January 20, 2006 in the case of Mr. McLean and from

October 9, 2000 through February 28, 2006 in the case of Mr. Pratt. Defendants'

duties while employed by XWave included providing network consulting

1

services at clients' places of business. Each Defendant was assigned to handle the needs of specific customers.

On the first day of their employment, each Defendant signed a document titled "Employee Non-Disclosure and Non-Competition Agreement" ("Agreement"). The Agreements signed by Defendants are identical in all relevant respects and read in part as follows:

> 3. **Obligations of Employee Regarding Confidential Information After Employment.** The employee agrees to protect the value of the Confidential Information of TechKnowledge Inc. and or its clients after leaving employment, . . . and will not use any such Confidential Information to his or her benefit . . . .
>
> 5. **Non-Competition After Employment.** If employed in a regular, full-time position, the employee agrees not to solicit or accept employment from any customers or potential customers (as defined in section 4 above) of TechKnowledge Inc. for one year after termination of employment without the express prior written consent of the president of TechKnowledge Inc. or pursuant of an agreement by the employee (or the employee's prospective employer) to pay TechKnowledge Inc. compensation for the hiring and training of a replacement employee. The compensation paid to TechKnowldge Inc. will not exceed thirty percent of the employee's starting annual salary.

Confidential information, in turn, is defined by the Agreement as "[a]ll information or material that has or could have commercial value or other utility in the business in which TechKnowledge Inc. is engaged . . . [including c]ustomer lists, customer and supplier identities . . . marketing knowledge and information . . . and any other information or procedures that are treated as secret or confidential by TechKnowledge Inc."

On January 20, 2006 Mr. McLean resigned from his position at XWave to start up a new business venture with another former XWave systems engineer. This business, Downeast Networks, Inc. ("Downeast"), provided similar services to those of XWave. On February 28, 2006, Mr. Pratt also resigned from XWave

and joined Downeast as a principal. Following Defendants' departure, a significant number of XWave clients either ceased using XWave's services entirely or cut back on their use. Further, many of these former XWave clients now use Downeast for their network servicing needs. In fact, a majority of Downeast's clients are former XWave clients.[1]

At some point in early 2006, XWave became aware that Downeast was servicing former XWave clients. In response, Xwave mailed letters to Defendants on May 25, 2006 reminding them of their obligations under the Agreement. Follow-up letters of a similar nature were sent to Defendants' attorney later in the year. Defendants did not respond to these letters.

XWave brought suit against Defendants by a complaint filed January 11, 2007 requesting preliminary and permanent injunctive relief (Count I) for Defendants' actions allegedly constituting a breach of contract (Counts II & III), misappropriation of trade secrets under the Uniform Trade Secrets Act, 10 M.R.S.A. § 1542, (Counts IV & V), and tortious interference with advantageous relations (Counts VI & VII).

## STANDARD OF REVIEW

In order to succeed on a motion for a temporary restraining order, the moving party has the burden of demonstrating the following: "(1) that plaintiff will suffer irreparable injury if the injunction is not granted, (2) that such injury outweighs any harm which granting the injunctive relief would inflict on the defendant, (3) that plaintiff has exhibited a likelihood of success on the merits (at most, a probability; at least, a substantial possibility), (4) that the public interest

---

[1] By XWave's estimate, unrebutted by Defendants, nineteen of Downeast's twenty-nine clients are former XWave clients.

will not be adversely affected by granting the injunction." *Ingraham v. University of Maine*, 441 A.2d 691, 693 (Me. 1982). These four criteria, however, "are not to be applied woodenly or in isolation from each other; rather, the court of equity should weigh all of these factors together in determining whether injunctive relief is proper." *Dep't of Envtl. Prot. v. Emerson*, 563 A.2d 762, 768 (Me. 1989). For example, if the evidence of success on the merits is strong, the showing of irreparable harm may be subject to less stringent requirements. *Id.*

## DISCUSSION

### I. Expiration of Noncompete Period

A threshold issue is whether, assuming *arguendo* that XWave can satisfy the *Ingraham* factors, the Court may enjoin Defendants from competing with XWave given that the noncompete provision of the Agreement's one-year period has already expired.[2] The Law Court has not directly addressed this issue. In *Saga Communs. Of New England, Inc. v. Voornas*, however, it observed in dicta that

> [w]e need not now decide whether [the plaintiff] could impress upon the court the necessity of granting it injunctive relief beyond the noncompete period except to note that historically, the Maine courts have taken a conservative attitude towards injunctions, holding the injunction to be an extraordinary remedy only to be granted with utmost caution when justice urgently demands it and the remedies at law fail to meet the requirements of the case.

2000 ME 156, ¶ 19, 756 A.2d 954, 962 (internal quotations omitted).

This caution expressed by the Law Court in *Voornas* carries little weight in the present situation as the facts underlying that case are dissimilar in key respects from those here.

---

[2] There was no such time limitation on Defendants' non-disclosure of confidential information.

4

*Voornas* involved a defendant employed as an on-air radio talent whose noncompete agreement with her employer stated that she "was precluded for a period of six months from performing services as an on-air announcer for any [competing] radio station [with]in a 75-mile radius." *Id.* ¶ 2, 756 A.2d at 956. Notwithstanding this agreement, shortly after leaving her employer and well before the expiration of her noncompete agreement, the defendant accepted employment with a competing radio station. *Id.* ¶ 3, 756 A.2d at 956. The defendant, however, *"did not immediately return to the air,* but instead undertook general promotional activities for [her new employer]." *Id.* ¶ 3, 756 A.2d at 957 (emphasis added). As a result, during the pendancy of the litigation, the defendant in *Voornas* did not violate her noncompete agreement.

From the context of the above facts, it is clear that the Law Court's expressed reluctance to grant an injunction enforcing the noncompete agreement in that case beyond its original time frame was in reaction to the fact that the defendant there had already honored the terms of the agreement while litigation proceeded.

In contrast, XWave alleges that Defendants have failed to honor their noncompete agreements from the beginning. As a result, enjoining Defendants from competing with XWave would be equitable. Nothing in *Voornas* suggests otherwise.

## II. Likelihood of Success of the Merits

Pursuant to the Agreement, Defendants contracted, upon termination of their employment, not to accept work from XWave clients for one year. Defendants' job involves generic skills, at least from a client's perspective. As such, a primary factor determining whether a client will repeatedly use the same

5

network services company is the relationship it builds with that company. As the ones who most closely interacted with clients on behalf of XWave, Defendants were in a position to build that relationship. It is likely that the potential for development of such relationships was a motivating factor behind XWave including the noncompete clause in the Agreement. Without this clause, employees could take advantage of relationships built with XWave clients to leave the company and take those clients with them. That is evidently what happened here as the majority of Downeast's clients are former XWave clients. Given that Downeast accepted employment from these clients within one year of the termination of Defendants' employment, it is highly likely that XWave will succeed on its claim alleging violation of the noncompete clause of the Agreement.[3]

In addition, there is evidence that, at least in a some cases, Defendants worked up proposed price point proposals for XWave clients, then used their knowledge of those proposals to offer lower priced proposals for the same services to the same clients through Downeast. Such actions, if proved at trial, would constitute a breach of the confidential information clause in the Agreement and potentially qualify as a violation of the Maine Trade Secrets Act. *See* 10 M.R.S.A. §§ 1541-1548; *Spottiswoode v. Levine*, 1999 ME 79, ¶ 27, 730 A.2d 166, 174-75 (holding that "for information to qualify as a trade secret, [it] must: (1) derive independent economic value, actual or potential, from not being

---

[3] The Court is not persuaded that the term "accept employment from any customers or potential customers" in the Agreement referred only to serving as in house technicians for XWave customers. The plain language of the Agreement evidences an intent to prohibit not simply full time employment of Defendants by XWave clients but also the kind of independent contractor arrangement engaged in here.

6

generally known [or] readily ascertainable; and (2) be the subject of efforts that are reasonable under the circumstances - to maintain its secrecy" (internal quotations omitted)).

## III. Irreparable Injury

An irreparable injury is one for which there exists no adequate remedy at law. *Bar Harbor Banking & Trust Co. v. Alexander*, 411 A.2d 74, 79 (Me. 1980). In this case, the loss of business relationships through Defendants' apparent violation of the Agreement satisfies the irreparable injury requirement. In essence, it will be impossible to do more than speculate as the value of the business lost to XWave through Defendants' successful efforts to lure that business to Downeast.[4]

## IV. Balancing of Harms and Adverse Effect on Public Interest

The final two *Ingraham* factors require only a brief mention. To the extent that Defendants are harmed by a prohibition on accepting employment from former XWave clients, such a harm does not outweigh the harm suffered by XWave through the loss of these clients. Further, the fact that a prohibition on accepting employment from former XWave clients may result in a bar against

---

[4] In their opposition, Defendants cited two cases in which courts held that the possible difficulty involved in calculating damages stemming from a prospective future economic injury as a result of a defendant's violation of a noncompete agreement was too speculative to support preliminary injunctive relief. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bishop*, 839 F. Supp. 68, 74-5 (D. Me. 1993); *Coast to Coast Engineering Svcs. v. Stein*, 2006 Me. Super. LEXIS 264, *6-*7 (Dec. 12, 2006). Those cases, however, are distinguishable in that speculation regarding whether Defendants may violate the noncompete clause of the Agreement is unnecessary as the facts before the Court show that Defendants have already violated the Agreement by soliciting and accepting employment from XWave clients. As a result, "[t]here is no need to speculate that the goodwill [Defendants] nurtured with [XWave]'s customers while [they were] employed by [XWave] will lead to ferreting away [XWave's] customers -- it has already happened." *Everett J. Prescott, Inc. v. Ross*, 383 F. Supp. 2d 180, 192 (D. Me. 2005).

7

servicing the majority of Defendants' clients only further reinforces the egregious nature of Defendants' violation of the noncompete clause of the Agreement.

Finally, enforcement of the Agreement would not adversely affect the public interest. The clauses are reasonable attempts to guard against the behavior by former employees that forms the basis of the present suit. A company may permissibly take steps to ensure that it does not serve as a temporary pit stop in which employees form relationships with its clients and then leverage those relationships, immediately upon termination of their employment, to poach clients for a competing business venture.

Therefore the entry is:

XWave's motion for a temporary restraining order is GRANTED. Defendants shall not accept or continue employment with any persons or entities that were clients of XWave during the terms of their employment at XWave. Defendants shall not use confidential information obtained during their employment at XWave to further Downeast's or their own individual business interests. Defendants are also prohibited from accepting employment from the clients of William Ziegenfus that his company, eZe Tech, Inc., is enjoined from servicing pursuant to the temporary restraining order issued on this date in *XWave New England v. William Ziegenfus* (Docket No. CV-07-15). This order shall remain in effect until a decision on issuance of a permanent injunction.

The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated at Portland, Maine this ___ day of _____, 2007.

Robert E. Crowley
Justice, Superior Court

8

ELLIOTT EPSTEIN ESQ
ISAACSON & RAYMOND
PO BOX 891
LEWISTON ME 04243-0891

OF COURTS
erland County
). Box 287
Maine 04112-0287

ROBERT BROOKS ESQ
VERRILL & DANA
PO BOX 586
PORTLAND ME 04112-0586

TIMOTHY O'BRIEN ESQ
VERRILL & DANA
PO BOX 147
KENNEBUNK ME 04043