STATE OF MAINE                          SUPERIOR COURT
PENOBSCOT, SS.                          CIVIL ACTION
                                        Docket No. CV-01-14

                                        JLH -

DONALD L. GARBRECHT
LAW LIBRARY

MAY 1 0 2002

Darling's d/b/a Darling's Ford,
        Plaintiff


        v.                              Order on Cross-Motions for
                                        Summary Judgment

Ford Motor Co.,
        Defendant

FILED & ENTERED
SUPERIOR COURT

APR 0 9 2002

PENOBSCOT COUNTY


        Pending before the court are the parties' motions for summary judgment. In

association with the motions, the parties have filed written argument and other

submissions. The court has considered these materials.

        Summary judgment is proper only if the record on summary judgment shows that

there are no genuine issues of material fact and that the movant is entitled to judgment as

a matter of law. *See* M.R.Civ.P. 56. To survive a motion for a summary judgment, the

opposing party must produce evidence that, if produced at trial, would be sufficient to

resist a motion for a judgment as a matter of law; "[t]he plaintiff must establish a *prima*

*facie* case for each element of the cause of action." *Rodrigue v. Rodrigue*, 1997 ME 99,

¶8, 694 A.2d 924, 926.

        The record on summary judgment establishes that Darling's sells and services

new and used Ford vehicles pursuant to a franchise agreement between the parties.

Under the terms of the franchise agreement, Darling's performs warranty work on Ford

vehicles and, to the extent allowed by applicable law,[1] is entitled to reimbursement from

---

[1] In its response to Darling's statement of material fact, Ford asserted that Darling's was
'entitled" to reimbursement only to the extent provided by Maine law and the terms of
the parties' franchise agreement. Ford made no record reference to any portion of the

1

Ford for costs associated with the labor and parts. In order to receive that reimbursement, Darling's submits a warranty claim to the defendant. Ford reimburses Darling's at a national rate, which is below the rate authorized under Maine law. *See* 10 M.R.S.A. § 1076 (providing that franchisees shall be paid for parts and labor associated with warranty work, at the retail rates customarily charged by that franchisee for non-warranty work). Darling's then submits a second claim seeking reimbursement for the difference between the statutorily required rate and Ford's national rate. In connection with the eight claims at issue in this case, Ford approved the claims within 30 days of their submission, and Ford then paid those claims. Subsequently, more than 30 days after Ford received the claims from Darling's, Ford "charged back" the earlier claim approvals. These "charge backs" had the effect of reversing the decisions to approve the claims that Darling's had submitted on the warranty work.

When Ford receives a warranty claim from a franchisee such as Darling's, the claim is approved if it is in proper form. Following that approval, Ford reviews some of those claims. Ford's decision of whether to review specific claims is influenced by the nature and number of warranty claims previously submitted by that franchisee. Prior to June 2000, Darling's warranty claim history had prompted Ford to initiate a "Warranty Counseling Process" for Darling's. As part of this process, prior to June 2000 Ford notified Darling's of its concerns regarding Darling's' warranty work practices. Additionally, Ford had conducted an "initial warranty review" and then a "warranty review follow-up." The nature and elements of the Warranty Counseling Process are set out in an agreement between the parties. As part of Ford's warranty review follow-up, in August 2000 it reviewed the claims at issue in this case, concluded that they were not proper claims and charged back the payments that it had previously authorized.

Title 10 M.R.S.A. § 1176 requires a motor vehicle franchisor, such as Ford, to either approve and pay a warranty claim submitted by franchisees or disapprove such a claim. Such action must be taken within 30 days of the date the franchisor receives such a claim. When a warranty claim is disapproved, the franchisor must provide written

---

agreement, and this part of its response is therefore insufficient. *See Biette v. Scott Dugas Trucking & Excavating, Inc.*, 676 A.2d 490, 494 (Me. 1996). The reference to Maine law, on the other hand, is a legal matter rather than a factual one, and therefore it is a proper one.

notice of the disapproval and the reasons the warranty claim was rejected. *Id.* Section 1176-A then provides:

> A manufacturer may reasonably and periodically audit a new motor vehicle dealer to determine the validity of paid claims or any charge-backs for customer or dealer incentives. Audits of incentive payments may be only for the 18-month period immediately preceding the date notifying the dealer that an audit is to be conducted.

Here, the record on summary judgment establishes that Ford approved and paid Darling's warranty claims in a way that was timely under section 1176. However, the parties dispute whether section 1176-A then authorizes Ford to take steps that amount to a reversal of those claim approvals through the warranty review process. The issues raised by the parties' cross-motions turn on the construction of sections 1176 and 1176-A. The Law Court has established the following principles of statutory construction: "When construing a statute, 'we look to the plain meaning of the language to give effect to the legislative intent.'. . . Additionally, we consider the statutory scheme as a whole in order to reach a harmonious result. . . .Lastly, '[w]e avoid statutory constructions that create absurd, illogical, or inconsistent results.' *Fairchild Semiconductor Corp v. State Tax Assessor*, 1999 ME 170, ¶ 7, 740 A.2d 584, 587 (internal citations omitted).

Here, in section 1176, the Legislature imposed obligations on a motor vehicle franchisor arising from warranty work performed by franchisees on vehicles manufactured by that franchisor. Those obligations encompass the amount of reimbursement due to the franchisee (namely, the retail rate for both parts and labor charged by that franchisor for non-warranty work) and the time within which the franchisor must take action on the warranty claim (namely, 30 days to pay or disapprove the claim). The next statutory provision, section 1176-A, authorizes the franchisor to "reasonably and periodically audit a new motor vehicle dealer to determine the validity of paid claims. . . ." The Legislature chose not to define the term "paid claims." However, the plain meaning of that phrase would include a paid warranty claim within its scope. Further, its very juxtaposition to the statute controlling the payment of warranty claims indicates that one type of a "paid claim" under section 1176-A is a warranty claim that is paid pursuant to section 1176 itself.

Darling's argues that this construction would defeat the apparent purpose of section 1176, which is to require the prompt settlement of warranty claims submitted by franchisees. First, this argument is weakened by the plain language of section 1176-A, which expressly permits a franchisor to conduct an audit of "paid claims." Here, Ford paid the warranty claims submitted by Darling's. The terms of section 1176-A then contemplate the very action taken here by Ford, namely, an audit of those claims that were paid previously. Further, the putative objective of section 1176 is not fundamentally undermined by a provision that permits a franchisor to review and examine paid claims, so long as those audits are conducted "reasonably and periodically."

Darling's also points to the legislative history accompanying the enactment of section 1176-A as evidence of the Legislature's intention that an audit under that section does not include audits of warranty claims. The proposed legislation that ultimately resulted in the enactment of section 1176-A also included a host of other proposals relating to the business practices of motor vehicle franchisors and franchisees out in 10 M.R.S.A. §§ 1171 *et seq.* As drafted in this L.D., section 1176-A limited audits to "manufacturer rebate[s], incentive[s] and other similar program[s]. . . ." The proposed summary to the original bill expressly noted that the proposed legislation would "establish[] standards to be applied in manufacturer audits. . . ." L.D. 1747, 118th Leg. (attached to plaintiffs motion as exhibit A). Additionally, as the bill was first framed, the new legislation would provide guidance to the courts in their efforts to glean the Legislature's intentions underlying section 1176.[2]

L.D. 1747 was amended after committee review. *See* Committee Amendment "A," L.D. 1747, 118th Leg. (attached to plaintiff's motion as exhibit B). There, proposed section 1176-A was given its final form. In contrast to the earlier draft, the nature of audits permitted by section 1176-A was broadened to include those for "paid claims or any charge-backs for customer or dealer incentives." Further, the proposed summary indicated that the provision "establishes an 18-month time limitation on audits." The summary also provides, "It [the bill] specifically does not address warranty

---

[2] The proposed legislative summary made specific reference to *Acadia Motors, Inc. v. Ford Motor Co.*, 44 F.3d 1050 (1st cir. 1995), in which the First Circuit engaged in a lengthy analysis attempting to discern the Legislature's intention underlying section 1176. *Id.* at 1055-58.

reimbursement of parts and labor in" section 1176 and that, in distinction to the summary in the earlier draft of the bill, the courts should *not* use the proposed legislation as a tool to determine legislative intent in pending proceedings regarding section 1176, including *Acadia Motors, Inc. See* note 2.

The court gains little from this confusing and unenlightening legislative history. If anything, the evolution of the statute through the legislative process appears to reflect an expansion of the types of audits that a franchisor could conduct. This demonstrated by the amendments affecting then-proposed section 1176-A itself. Further, the summary's reference to "an 18-month time limitation on audits" is even broader than the language of section 1176-A would suggest, because the statute itself is limited to audits for "paid claims" and for incentive programs. If the court gave this statement controlling effect here, then section 1176-A would have a broader application than either of the parties suggest, and by itself this datum would undermine the plaintiff's argument. Finally, the Legislature evidently concluded that it did not want the new enactments to be seen as a reflection of its intent underlying previous formulations of section 1176, which was the subject of recent litigation. However, the court views this disclaimer as relating only to cases involving issues such as those addressed in *Acadia Motors* and others, which involved the amount of any section 1176 reimbursement for warranty claims and the manner in which the franchisors could absorb those costs. Section 1176-A, of course, was not implicated in any of those cases, because that section was not yet been enacted.

Thus, with little light shed by statutory history, the court is left with the plain language of section 1176-A. From this, the court concludes that Ford was authorized to conduct an audit, as it did here, of Darling's warranty claims, even though Ford had already paid those claims pursuant to section 1176.

The second sentence of section 1176 creates an 18 month deadline in which the franchisor is authorized to conduct audits of incentive payments. This does not address the other type of audit noted in the first sentence of section 1176, which is an audit of "paid claims" and which is the type of audit at issue in this case.[3] Because the

---

[3] Although the plaintiff argues that the audits noted in the first and second sentences of section 1176 are co-extensive, the court expects that a "paid claim" is quite different from an "incentive payment." The former has connotations of a legal liability – such as would

5

Legislature chose not to impose such a limitation on audits of "paid claims," the propriety of such a claim is limited by the statutory requirement that it must be reasonable. Darling's sole argument in support of its motion for summary judgment and in opposition to Ford's own motion for summary judgment is that section 1176-A is inapplicable in this case. Darling's has not argued that if section 1176-A is applicable, Ford's audit was untimely.[4] Therefore, Darling's has waived any such challenge to Ford's argument that it acted properly under section 1176-A.[5]

Therefore, from this record, the court concludes that Ford was authorized statutorily to audit the warranty charges that it previously approved and, as a necessary part of that audit process, to charge back those amounts.

The entry shall be:

For the foregoing reasons, Darling's motion for summary judgment is denied. Ford Motor Company's motion is granted. Summary judgment is entered for the

---

result from performance under a warranty, followed by an obligation of a third party (as a franchisor) to reimburse the party who performed the warranty work. This is wholly different from payment used to reduce the buyer's purchase cost.

[4] Darling's argues that its "quarrel with Ford is that it uses a so-called warranty audit process to undermine and circumvent the deadlines set forth in 10 M.R.S.A. § 1176. . . . [N]o audit rights are allowed under the statute." "Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion for Summary Judgment and to Defendant's Cross Motion for Summary Judgment" at pp. 1-2.

[5] Even if Darling's argued in the alternative that Ford's audit of Darling's warranty claims was unreasonable and thus barred by section 1176-A, that argument could not be sustained on the present record. In its statement of material fact, Ford has established the process of the audit, the contractual authority supporting the audit, the reasons why it was entitled to conduct the audit in the circumstances of this case and the connection between the audit and the charge-backs. In its opposing statement of material fact, Darling's did not dispute those assertions (although Darling's objected to their materiality). Therefore, the historical facts are established in this record. When the facts are undisputed, the resulting legal conclusions may be drawn even in the context of a summary judgment motion. *North East Ins. Co. v. Soucy*, 1997 ME 106, ¶ 8, 697 A.2d 1141, 1143. Here, if the evidence set out in the present record were the only evidence presented at trial, a factfinder could conclude only that the audit was reasonable.

defendant. The defendant is awarded its costs of court.

Dated: April 8, 2002

_____
Justice, Maine Superior Court

STATE OF MAINE
PENOBSCOT, SS.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-01-14

[STAMP]

Darling's d/b/a Darling's Ford,
    Plaintiff

v.

ORDER AFTER REMAND

DONALD L. GARBRECHT
LAW LIBRARY

SEP 5 2003

Ford Motor Co.,
    Defendant

Following a post-remand conference of counsel, the parties have filed written submissions setting out their positions on the nature of the issues that remain pending; Darling's contends that the only remaining questions relate to remedial issues, and Ford urges that liability issues also remain outstanding. The court has considered those submissions.

In its complaint, Darling's alleged that Ford violated the provisions of 10 M.R.S.A. § 1176 when it charged Darling's back against credits it previously approved for warranty work performed by Darling's on Ford vehicles. Ford moved to dismiss the claim in part on the ground that section 1176-A authorized it to make those charge backs. (Ford's motion was also based on two other arguments that are not pertinent here.) After the court denied that motion, Darling's filed a motion for summary judgment. That motion was predicated on two arguments: first, that the charge backs were prohibited by the provisions of section 1176; and second, that section 1176-A also did not entitle Ford to engage in that practice. Ford filed an opposition to Darling's motion and a cross-motion for summary judgment; the two were filed in a consolidated submission. Ford made three arguments in connection with the summary judgment motions: first, that section 1176-A authorized it to perform an audit of warranty charges such as those at issue in this case; second, that the charge backs in fact were the result of audits; and third,

1

that in any event, due to the interplay between sections 1173 and 1176, Darling's is not entitled the injunctive relief it seeks under the former statute. Ford did not argue that the provisions of section 1176, taken alone, authorized it to issue the charge backs, despite the fact that Darling's argued the contrary position expressly.[1]

The court granted Ford's motion based on the conclusion that section 1176-A authorized Ford to issue the charge backs that Darling's challenges. Consequently, there was no need for the court to reach Darling's primary liability argument, namely, that Ford violated the provisions of section 1176. The Law Court held that this court's construction of section 1176-A was wrong and that the charge backs were not permitted under section 1176-A. *See Darling's v. Ford Motor Co.*, 2003 ME 21, 825 A.2d 344. The Law Court then remanded the case with instructions to enter "partial summary judgment in favor of Darling's relative to section 1176-A, and for further proceedings to determine whether Darling's is entitled to relief pursuant to section 1173." *Id.*, ¶ 13, 825 A.2d at 347-48.

From this procedural history, the court concludes here that the partial summary judgment that the Law Court has ordered this court to issue will constitute a finding that Ford violated the provisions of section 1176. When Darling's moved for summary judgment on its claim based on section 1176, the only statutory ground underlying Ford's objection was section 1176-A. The Law Court has now established that section 1176-A did not authorize Ford to issue the charge backs against Darling's. Thus, Darling's argument under section 1176 is left standing.

Ford argues that there was no need for it to raise any arguments in response to Darling's analysis of section 1176. That is true with respect to Ford's cross-motion. If

---

[1] For example, in its memorandum that both opposed Darling's motion and supported its own cross-motion, Ford noted, "Thus, the only live question for purposes of the present motion is whether the charge-backs in this case were done pursuant to an 'audit' within the meaning of the statute." Defendant Ford Motor Company's Opposition to Plaintiff's Motion for Summary Judgment and Cross-Motion for Summary Judgment, dated January 7, 2002, at p. 8. The context of this passage makes clear that the "audit" is the one covered by section 1176-A, and the referent "statute" is section 1176-A. Further, for the reasons noted in the text, the phrase "for purposes of this motion" does not overcome the fact that Darling's argued in its motion that section 1176 does not allow the charge backs that Ford imposed. Thus, "the present motion" is one that directly implicated Darling's claim that Ford violated the provisions of section 1176.

2

instructions from entry of summary judgment to entry of partial summary is explained by the fact that Darling's remedial claims remain outstanding, and further proceedings are needed to address them. Thus, summary judgment (in the sense of a full and final judgment) is premature.

Therefore, the entry shall be:

For the foregoing reasons, on remand, summary judgment is entered for the plaintiff. The defendant is found to have violated the charge back provisions of 10 M.R.S.A. § 1176. On September 5, 2003, at 8:00 am, a telephonic conference of counsel shall be held to address further proceedings relating to damages and other remedial issues. Counsel for the plaintiff is requested to arrange the call.

Dated: August 29, 2003

_____
Justice, Maine Superior Court
Jeffrey L. Hjelm

4

Date Filed __1/23/01__ _____Penobscot_____ Docket No. ____CV-2001-14____
                                County

                                        PEN-02-268

Action _____Permanent Injunction_____
ASSIGNED TO JUSTICE JEFFREY L. HJELM


DARLING'S d/b/a
DARLING'S FORD                     VS.  FORD MOTOR COMPANY

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| EATON PEABODY BRADFORD & VEAGUE<br>P O Box 9- 167 Park Row<br>Brunswick ME  04011<br>BY: Judy A.S. Metcalf, Esq. | VERRILL & DANA<br>One Portland Square<br>Portland ME  04112-0586<br>BY: Daniel L. Rosenthal, Esq.<br>    James T. Kilbreth, Esq. |

| Date of Entry | |
|---|---|
| 1/23/01 | Complaint filed. |
| 1/23/01 | Case File Notice Postcard forwarded to Plaintiff's Counsel. |
| 1/31/01 | Officer's Return of Service on Defendant Ford Motor Co., Inc. to William RIchardson, Administrative Asst. filed. (s.d. 1/26/01) |
| 2/15/01 | Defendant Ford Motor Company's Motion to Dismiss filed. |
| 2/16/01 | Scheduling Order (MRCivP 16(a) filed.  Discovery Deadline is November 1, 2001. (Hjelm, J.) Copy forwarded to attorneys of record. |
| 3/8/01 | Plaintiff's Motion to Amend Complaint and Incorporated Memorandum filed. |
| 3/8/01 | Amended Complaint filed by Plaintiff. |
| 3/8/01 | Plaintiff's Opposition to Defendant's Motion to Dismiss filed. Exhibits A & B attached. |
| 3/15/01 | Defendant Ford Motor Company's Reply to Plaintiff's Opposition to Motion to Dismiss filed.  Exhibit 1 attached. |
| 5/4/01 | Defendant's Request for Hearing on Motion to Dismiss filed. |
| 5/4/01 | File presented to Justice Hjelm for review. |
| 5/4/2001 | File returned by the Court with instructions for the clerk to schedule Defendant's Motion to Dismiss. (Hjelm, J.) |

over

STATE OF MAINE
PENOBSCOT, SS.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-01-14

_H - PEN -- 4/2/04

DONALD L. PA...
LA...

Darling's d/b/a Darling's Ford,
        Plaintiff

MAY 25 2004

v.                                          Order

Ford Motor Co.,
        Defendant

FILED & ENTERED
SUPERIOR COURT

APR 02 2004

PENOBSCOT COUNTY

Pending before the court are Ford's motion for reconsideration of the order after remand dated August 29, 2003; Ford's motion to dismiss Darling's claim for injunctive relief; and Darling's motion to amend. The court has considered the parties' written submissions on these motions.

## A. Motion for reconsideration

In the post-remand order issued in August 2003, summary judgment was entered for Darling's because the court concluded that Ford had not argued or preserved any liability issue other than the one, centered on 10 M.R.S.A. § 1176-A, that the Law Court resolved adversely to it. Ford now argues that this conclusion is erroneous and that Ford should be allowed to litigate Darling's claim that section 1176 did not authorize Ford to charge back amounts that it had previously credited to Darling's. Ford makes several arguments in support of its request to reopen this issue.

Ford contends that in fact it advanced a substantive argument opposing Darling's contention, raised in its motion for summary judgment, that the charge backs violated the terms of section 1176, aside from any consideration of the audit provisions of section 1176-A. In the August 2003 order, the court concluded that Ford had not made this argument. With the pendency of Ford's motion for reconsideration, the court again has carefully reviewed the parties' submissions on their cross motions for summary judgment. The court remains satisfied that Ford did not meaningfully argue that the

i

charge back did not violate section 1176. As is set out in the August 2003 order, Darling's argued expressly that Ford's charge backs violated section 1176 and were not sanctioned by 1176-A. In response to that motion and in support of its own, Ford argued that its audits were conducted in a manner authorized by section 1176-A. Darling's primary argument, that Ford violated section 1176 in the first place, went unaddressed in any way that would reasonably have brought that opposition to light.[1]

Ford also argues that the court's earlier denial of its motion to dismiss led it to believe that Darling's section 1176 argument had already been resolved favorably to Ford. This is not a fair interpretation of the court's order. In its motion to dismiss, Ford contended that Darling's complaint should be dismissed because its complaint established that the charge back resulted from an audit that was proper under section 1176-A. In denying that motion, the court merely ruled that Darling's complaint did not inevitably lead to that conclusion and that the issue needed factual development. The order, however, had no bearing or impact on the viability of Darling's contention that the charge backs violated section 1176 itself. Thus, this issue remained fair game.

Ford also argues that it preserved its contention that the audits were permissible by contract. This, however, misses the point of Darling's core argument, which it raised pivotally in its summary judgment motion: that section 1176 precluded the charge backs imposed by Ford. Because Ford did not address Darling's section 1176 liability claim, it necessarily did not challenge Darling's argument that the statutory violation is dispositive of the liability issue.

Finally, Ford renews its analysis of the meaning of the Law Court's mandate and the Court's treatment of its motion to reconsider. This court has already considered and addressed those arguments in the August 2003 order.

**B. Motion to dismiss**

Ford has moved to dismiss Darling's claim for injunctive relief under section 1173. In support of this motion, Ford contends that injunctive relief is not available as a remedy for a franchisor's violation of the charge back restrictions established in section

---

[1] In its motion for reconsideration, Ford argues that it did make this argument, "albeit briefly and simply. . . ." Even the references to those arguments, however, demonstrate that they were tied to section 1176-A and did not stand independent of the issues raised by that latter statute and on which Ford predicated its analysis.

1176. Alternatively, Ford argues that in the circumstances of this case, a violation of section 1176 can be charged to Ford only because of its failure to properly oppose that part of Darling's summary judgment motion in which Darling's argued that the charge backs resulted in that violation.

The court treats this motion as one that is limited to the legal question of whether Darling's has stated a claim on which injunctive relief could be granted. In its motion, Ford has disclaimed the alternative approach, which would amount to a fact-based motion for summary judgment and raise the question of whether, in the specific circumstances of this case, the record generates a factual basis that could allow injunctive relief. *See* Motion of Defendant Ford Motor Company to Dismiss Claim for Injunctive Relief at p. 8, n. 5.

"A motion to dismiss tests the legal sufficiency of the complaint." *McAfee v. Cole*, 637 A.2d 463, 465 (Me. 1994). On a motion to dismiss, the complaint must be examined "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* A dismissal is proper "only when it appears beyond doubt that a plaintiff is entitled to no relief under any set of facts that he might prove in support of his claim." *Hall v. Board of Environmental Protection*, 498 A.2d 260, 266 (Me. 1985). *See also Heber v. Lucerne-in Maine Village Co.*, 2000 ME 137, ¶ 7, 755 A.2d 1064, 1066.

In its amended complaint, Darling's alleged that Ford violated section 1176 because it assessed charge backs outside of the applicable time limits. On that basis, Darling's then requested entry of judgment under section 1173 that would include a permanent injunction prohibiting Ford from violating section 1176 in the future. In pertinent part, section 1173(1) provides:

> Any franchisee or motor vehicle dealer who suffers financial loss of money or property, real or personal, or who has been otherwise adversely affected as the result of the use or employment by a franchisor of. . .*any practice declared unlawful by this chapter* may bring an action for damages and equitable relief, including injunctive relief.

(Emphasis added.) Section 1176 is located in the same statutory chapter (chapter 204) as section 1173. Thus, the plain language of section 1173 allows an aggrieved franchisee to

seek injunctive relief for violations of section 1176. Darling's has made this precise claim here.

Ford argues that section 1176 includes its own remedial provisions for violations of that statute. It also points out that at least one of those remedies (namely, attorney's fees) is also included in section 1173. From this, Ford argues that the remedies for a violation of section 1176 are confined to the remedies identified in that section. However, Ford's construction would require a departure from the express and comprehensive manner in which the Legislature chose to integrate the remedial terms of section 1173 into liability claims pursued under the liability provisions of chapter 204, which includes section 1176. Application of conventional principles of statutory construction, *see, e.g., Ashe v. Enterprise Rent-A-Car*, 2003 ME 147, ¶ 7, 838 A.2d 1157, 1159, leads to the conclusion that Darling's is not foreclosed as a matter of law from seeking injunctive relief.

Further, the manner in which Darling's has secured summary judgment against Ford is not a bar to the availability of injunctive relief.

For these reasons, the court concludes that Darling's may pursue its claim for the issuance of a permanent injunction. Whether the facts warrant that relief must be left to another day.

## C. Motion to amend

Finally, Darling's has moved to amend its complaint to include claims based on charge backs that Ford allegedly has imposed during the pendency of this case. As it stands, Darling's amended complaint alleges approximately $2,300 in improper charge backs. It now seeks to further amend its complaint to allege an additional $35,000 in improper charge backs, based on an additional series of transactions that are not quantified in the proposed pleading.

The court denies the motion. If the motion were granted, then an entirely distinct set of charge backs would be the subject of litigation. Despite Darling's argument to the contrary, principles of res judicata would not bar Ford from contesting Darling's allegation that these separate charge backs contravened section 1176. For that bar to arise from either issue or claim preclusion, there must be a final judgment embodying the basis for that bar. *See In re: Kaleb D.*, 2001 ME 55, ¶ 7 and n. 5, 769 A.2d 179, 183.

This case has not proceeded to a final judgment, and thus the expansion of this case's factual parameters could fairly lead to discovery on those claims and motion practice.

The court recognizes the limited conservation of resources if additional charge backs were now integrated into the mix, eliminating the potential need for a separate lawsuit. However, the amendment proposed by Darling's would return this case to the early pretrial stages. In its present posture, the liability issues have been determined, and the remaining question is that of damages. Under these circumstances, the court denies Darling's motion.

The entry shall be:

For the foregoing reasons, Ford's motions to reconsider and to dismiss are denied. Darling's motion to amend is denied. Ford's motion to strike is denied, and the court has considered Ford's surreply argument on Darling's motion to amend. A conference call shall be held with counsel and the court to determine the future course of proceedings in this case.

Dated: April 2, 2004

_____
Justice, Maine Superior Court
Jeffrey L. Hjelm

Date Filed  1/23/01          Penobscot          Docket No.      CV-2001-14
                             County                        PEN-02-268

Action      Permanent Injunction
ASSIGNED TO JUSTICE JEFFREY L. HJELM


DARLING'S d/b/a
DARLING'S FORD                    vs.   FORD MOTOR COMPANY

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| EATON PEABODY BRADFORD & VEAGUE<br>P O Box 9- 167 Park Row<br>Brunswick ME  04011<br>BY: Judy A.S. Metcalf, Esq. | VERRILL & DANA<br>One Portland Square<br>Portland ME  04112-0586<br>BY: Daniel L. Rosenthal, Esq.<br>    James T. Kilbreth, Esq. |

| Date of Entry | |
|---|---|
| 1/23/01 | Complaint filed. |
| 1/23/01 | Case File Notice Postcard forwarded to Plaintiff's Counsel. |
| 1/31/01 | Officer's Return of Service on Defendant Ford Motor Co., Inc. to William RIchardson, Administrative Asst. filed. (s.d. 1/26/01) |
| 2/15/01 | Defendant Ford Motor Company's Motion to Dismiss filed. |
| 2/16/01 | Scheduling Order (MRCivP 16(a) filed.  Discovery Deadline is November 1, 2001. (Hjelm, J.) Copy forwarded to attorneys of record. |
| 3/8/01 | Plaintiff's Motion to Amend Complaint and Incorporated Memorandum filed. |
| 3/8/01 | Amended Complaint filed by Plaintiff. |
| 3/8/01 | Plaintiff's Opposition to Defendant's Motion to Dismiss filed. Exhibits A & B attached. |
| 3/15/01 | Defendant Ford Motor Company's Reply to Plaintiff's Opposition to Motion to Dismiss filed.  Exhibit 1 attached. |
| 5/4/01 | Defendant's Request for Hearing on Motion to Dismiss filed. |
| 5/4/01 | File presented to Justice Hjelm for review. |
| 5/4/2001 | File returned by the Court with instructions for the clerk to schedule Defendant's Motion to Dismiss. (Hjelm, J.) |

over

STATE OF MAINE                                  SUPERIOR COURT
PENOBSCOT, SS.                                  CIVIL ACTION
                                                Docket No. CV-01-14
                                                JLH - PEN - 12/13 - 2004

                                    ┌─────────────────────────┐
                                    │   FILED & ENTERED        │
                                    │   SUPERIOR COURT         │
                                    │                          │
                                    │     DEC 13 2004           │
                                    │                          │
                                    │   PENOBSCOT COUNTY       │
Darling's d/b/a Darling's Ford,     └─────────────────────────┘
        Plaintiff


        v.                                      Findings and Decision


Ford Motor Co.,            DEC 2  2004
        Defendant


On July 5 and 6, 2004, hearing was held on the limited issue of Darling's request for injunctive relief that would enjoin and prohibit Ford Motor Company from charging back any payments or credits that it had issued to Darling's on warranty reimbursement claims. At the hearing, representatives of and counsel for both parties were present.

The often contentious history of the parties at bar is set out in various orders in this case and, even more extensively, in court opinions issued in separate actions. That background need not be reiterated here in detail. However, a limited rendition of some central facts is necessary to provide context to the narrow issue now before the court. Darling's, a Ford dealer and franchisee, submitted to Ford several warranty reimbursement claims for work it had performed on Ford vehicles. Pursuant to the formulation of 10 M.R.S.A. § 1176 that was effective at the time of those claim submissions, Ford was allowed thirty days from the date of submission to either approve or disapprove those claims.[1] If Ford approved the claims, the then-effective provisions of section 1176 then required it to pay the claims within thirty days of the date of approval. For the warranty reimbursement claims at issue here, Ford approved those claims within the allowable time. However, subsequent to its decision to approve the claims, and

---

[1] Section 1176 was amended effective September 13, 2003, to allow a franchisor sixty days to approve or disapprove a warranty reimbursement claim and then sixty days from the date of any approval to pay the claim. *See* P.L. 2003, c. 356, § 10.

1

subsequent even to the expiration of the thirty day deadline to act on the claims, Ford audited those claims and charged back the amounts that it had previously allowed. Darling's commenced this action, alleging that the charge backs were improper.

Ruling on the parties' cross-motions for summary judgment, the court concluded that section 1176-A authorized Ford both to conduct audits of warranty reimbursement claims that it had approved previously and to charge back the dealer for claims that it determined, based on the post-approval audit, should not have been paid. On this basis, the court entered judgment for Ford. Darling's appealed that decision to the Law Court. The Court vacated the judgment, holding that the audits and charge backs allowed under section 1176-A do not extend to warranty reimbursement claims. *See Darling's v. Ford Motor Co.*, 2003 ME 21, 825 A.2d 344. For the reasons noted below, it is significant that although the Law Court rejected the construction of section 1176-A adopted by this court, it held that incorrect reading of section 1176-A was "not unreasonable." *Id.*, ¶ 10, 825 A.2d at 347. Subsequent to the Law Court's order of remand, for the reasons set out in two separate orders, this court concluded that Ford had failed to counter Darling's predicate argument that its charge backs violated section 1176. Thus, based on a combination of the Law Court's recent definitive construction of section 1176-A and Darling's unopposed contention based on section 1176, the court entered partial summary judgment for Darling's, establishing the improper quality of the charge backs and reserving the question of relief for hearing.

For the reasons set out in the court's April 2, 2004, order denying Ford's motion to dismiss, injunctive relief is a remedy that may be available to a franchisee based on a franchisor's violation of section 1176. *See* 10 M.R.S.A. § 1173.[2] The Legislature did not identify the criteria or considerations that would bear on the question of when injunctive relief should be granted. Thus, the court relies here on the conventional framework applicable to such claims: whether the plaintiff will suffer irreparable injury if the injunction is not granted; whether that irreparable injury outweighs the harm that would befall the defendant if injunctive relief were granted; and whether the public interest

---

[2] Section 1173 also allows an award of damages, and "regardless of the amount in controversy," it requires an award of attorney's fees and costs to a prevailing franchisee.

2

would be adversely affected if an injunction issued.[3] *Ingraham v. University of Maine at Orono*, 441 A.2d 691, 693. The claim for injunction relief, however, must also be examined in light of the overarching observation adopted by the Law Court: "Historically, the Maine courts have taken a conservative attitude toward injunctions, holding the injunction to be an extraordinary remedy only to be granted with utmost caution when justice urgently demands it and the remedies at law fail to meet the requirements of the case." HORTON MCGEEHEE, MAINE CIVIL REMEDIES, § 5.1, a pp. 5-2 to 5-3 (1991) (internal punctuation and citation omitted), *quoted in Saga Communications, Inc. v. Voornas*, 2000 ME 156, ¶ 19, 756 A.2d 954, 962.

Brought into proper focus, this is a case that examines whether Ford is statutorily precluded from charging back against credits or payments previously approved for warranty reimbursement claims, when those charge backs are issued outside of the time allowed for Ford to approve or disapprove the claim in the first instance. *See* note 3

---

[3] The familiar formulation of the injunction analysis also requires consideration of whether the plaintiff is likely to succeed on the merits. *Ingraham*, 441 A.2d at 693. Here, the court has entered partial judgment in favor of the plaintiff, establishing that Ford violated section 1176 when it issued charge backs on the warranty reimbursement claims at issue in this case. The court rejects Ford's contention that the "procedural default" that led to the summary judgment is not a sufficient basis for the imposition of injunctive relief. Regardless of how it is reached, a summary judgment has the effect of an adjudication on the merits because it carries with it all of the consequences of a judgment reached through any other means in cases where the respondent has appeared. Ford should not be immunized from a form of relief that is otherwise available to Darling's simply because Ford failed to tender an argument that countered the basis for Darling's liability claim.

*Rosen v. Harris*, 427 A.2d 953 (Me. 1981) does not compel a different conclusion. There, the Law Court vacated a permanent injunctive order because the order would have enjoined conduct that was not the basis for the complaint. *Id.* at 955-56. Here, the injunction sought by Darling's, at least in part, would be directed toward the conduct that it has specifically alleged is wrongful and that is central to this case. (The court notes, however, that the conclusion of Darling's post-trial argument articulates a proposed order that simultaneously covers but goes beyond the factual context of this case. As Darling's has framed the issue in its complaint, *see* complaint at ¶ 11, and as the Law Court has framed its holding, *see Darling's*, 2003 ME 21, ¶ 3, 825 A.2d at 345, this case calls for an examination of charge backs issued by Ford following the expiration of the initial statutory period for approving or disapproving the warranty reimbursement claims. Thus, even if Darling's had demonstrated that a permanent injunction were appropriate, such relief would not extend beyond the factual context of this case and thus would not address charge backs issued within the initial approval/disapproval period.)

3

*supra.* Despite the volume of litigation involving these parties on many other aspects on Maine's laws regulating the warranty reimbursement process, the issue presented here has not been previously adjudicated in an authoritative way.[4] The court gives little weight to other aspects of Ford's procedures and decisions that Darling's seeks to characterize as obstructive, because the only injunction that could result from this case would be tailored precisely to the conduct that Darling's challenges in this case. Therefore, evidence that Ford used other practices that Darling's claims violated other aspects of the warranty reimbursement laws is not particularly compelling here.

It is also important to recognize that although the Law Court has established that section 1176-A does not authorize Ford to conduct the audits that resulted in the instant charge backs, it was "not unreasonable" to read that statute as allowing such a practice. *Darling's*, 2003 ME 21, ¶ 10, 825 A.2d at 347. Indeed, this court engaged in that construction and entered judgment on that basis. Although the Law Court has rejected that conclusion, the question had been subject to legitimate debate. Thus, the court cannot conclude here that Ford's election to charge back the amounts of the reimbursement claims was indefensible.

The Law Court has ratified the notion that injunctive relief is warranted "when justice urgently demands it. . . ." *Saga Communications*, 2000 ME 156, ¶ 19, 756 A.2d at 962. That circumstance has not been established here. The strongest evidence supporting the issuance of injunctive relief is Ford's ongoing practice of charging back against warranty reimbursement claims subsequent to the deadline for approving or disapproving such claims, even after the Law Court issued its decision addressing the meaning of section 1176-A, and even after this court entered a post-remand summary judgment order holding that practice to be unlawful under section 1176.[5] *See* plaintiff's

---

[4] The issue raised in this case had been litigated in a small claims action and resolved favorably to Darling's position here. *See* plaintiff's exhibit 4. However, a small claims judgment does not have preclusive effect. *See* 14 M.R.S.A. § 7485. As far as the record evidence reveals, neither party had sought an authoritative answer to the question at bar prior to the initiation of this case.

[5] Those transactions are shown in plaintiff's exhibit 2. As the Ford representative explained the summary, which constitutes the first two pages of the exhibit, the "repair date" is the date when Darling's submitted the warranty reimbursement claim. The

exhibits 2, 12, and 13. Although one may argue –as Darling's has – that this manifests a level of defiance that can be remedied only through extraordinary relief, Darling's is not without the other forms of relief provided by statute. And the lack of finality in the case at bar may be viewed as a mitigating factor that tempers the effects of Ford's practice. At its core, Darling's requests an injunction that will require Ford to act in conformity with a statute, the meaning of which has not been finally established. At the very least, such an order is premature. When this factor is applied to the *Ingraham* framework, it represents a conclusion that at this moment in the judicial process adjudicating the effects of sections 1176 and 1176-A on the facts at issue here, Darling's has not established that its remedies at law are inadequate. The court concludes that the particular circumstances underlying Darling's claim at bar do not justify invocation of the court's equitable powers.

Ford has raised other arguments in opposition to Darling's claim for a permanent injunction. The court need not and does not reach those issues.

The parties have stipulated that the charge backs associated with the warranty reimbursement claims underlying the complaint amount to $2,340.01. When this matter is finally resolved in this court, judgment will be entered in favor of Darling's in that amount. Section 1173 also addresses awards of attorney's fees and costs. Darling's has filed an affidavit of attorney's fees that covers legal work performed through April 30, 2004. *See* plaintiff's exhibit 3. By December 30, 2004, Darling's may file a new affidavit that covers all fees and costs it seeks here. Contemporaneously, Darling's may submit written argument in support of its claim for fees and costs. Within fourteen days of that filing, Ford may file a response to Darling's submission. Within seven days of Ford's filing, Darling's may file a final reply. The court will issue an order on that claim for relief based on the parties' written submissions.

---

"Aces II Register Date" is the date when Ford advised Darling's of its intent to charge back the amount it had previously approved. The "Parts Statement Date" is the actual date of the charge back. Thus, in each charge back covered by plaintiff's exhibit 2, more than thirty days elapsed between the claim date and the charge back date. Pursuant to the partial summary judgment already entered in this case, these charge backs were wrongful. They amount to more than $43,000.

5

The court concludes that Darling's claim for attorney's fees is integral to the relief sought by Darling's. Thus, for now, the court's decisions to date on liability and remedial claims – including the decision issued in this order -- are deemed *not* to constitute a final judgment. *See* M.R.Civ.P. 54(b)(2). Because of the near inevitability of an appeal, the court finds it most efficient to resolve all aspects of this case, including claims relating to attorney's fees, prior to the initiation of an appeal in order to allow a unified appellate presentation and consideration of those issues.

The entry shall be:

For the foregoing reasons, Darling's request for issuance of a permanent injunction is denied. Further proceedings in this action will be as set out in the order.

Dated: December 12, 2004

_____
Justice, Maine Superior Court

6

DARLINGS - PLAINTIFF
114 SYLVAN ROAD P O BOX 569
BANGOR ME 044010569
Attorney for: DARLINGS
JUDY METCALF  - RETAINED 01/23/2001
EATON PEABODY
167 PARK ROW
PO BOX 9
BRUNSWICK ME 04011-0009


vs
FORD MOTOR COMPANY - DEFENDANT
C/O C T CORPORATION SYSTEM 1 PORTLAND SQUARE
PORTLAND ME 04101
Attorney for: FORD MOTOR COMPANY
DANIEL L ROSENTHAL  - RETAINED 02/15/2001
VERRILL & DANA
ONE PORTLAND SQUARE
PO BOX 586
PORTLAND ME 04112-0586


Attorney for: FORD MOTOR COMPANY
JAMES KILBRETH  - RETAINED 02/15/2001
VERRILL & DANA
ONE PORTLAND SQUARE
PO BOX 586
PORTLAND ME 04112-0586


Attorney for: FORD MOTOR COMPANY
VISITING ATTORNEY  - RETAINED 07/06/2004
VISITING ATTORNEY

SUPERIOR COURT
PENOBSCOT, ss.
Docket No   BANSC-CV-2001-00014


**DOCKET RECORD**

Filing Document: ANSWER
Filing Date: 01/23/2001

Minor Case Type: OTHER STATUTORY ACTIONS

## Docket Events:

10/20/2003 FILING DOCUMENT - ANSWER FILED ON 01/23/2001

        NOTE - PRIOR ENTRIES IN MANUAL DOCKET ENTERED ON 01/23/2001

10/20/2003 Party(s):  DARLINGS
        ATTORNEY - RETAINED ENTERED ON 01/23/2001
        Plaintiff's Attorney: JUDY METCALF

10/20/2003 Party(s):  FORD MOTOR COMPANY
        ATTORNEY - RETAINED ENTERED ON 02/15/2001
        Defendant's Attorney: DANIEL L ROSENTHAL

10/20/2003 Party(s):  FORD MOTOR COMPANY
        ATTORNEY - RETAINED ENTERED ON 02/15/2001
        Defendant's Attorney: JAMES KILBRETH