STATE OF MAINE                                      SUPERIOR COURT
CUMBERLAND, ss.                                     CIVIL ACTION
                                                    Docket No. CV-2021-190

JOHN ERICKSEN and KATHRYN       )
ERICKSEN,                       )
                                )
        Plaintiffs,             )
                                )            **ORDER ON DEFENDANTS'**
    v.                          )          **MOTION FOR PARTIAL SUMMARY**
                                )                  **JUDGMENT**
MAINE COAST KITCHEN             )
DESIGN, INC. and TINA           )
RICHARDSON,                     )
                                )
        Defendants.             )

This matter is before the Court on Defendants Maine Coast Kitchen Design, Inc. ("MCKD") and Tina Richardson's Motion for Partial Summary Judgment. Defendants request entry of summary judgment in their favor on Count XI of Plaintiffs John and Kathryn Ericksen's Complaint, which pleads a fraud claim. Defendants also move for an award of attorney's fees. Plaintiffs oppose the motion.

During the pendency of Defendants' motion, the Court granted Plaintiffs' Motion for Leave to Amend Complaint. The Court will consider Defendants' motion with respect to Count VI of Plaintiffs' First Amended Complaint, which pleads a fraud claim substantially similar to former Count XI. For the following reasons, the Court grants Defendants' Motion for Partial Summary Judgment.

I.      **Facts**

The following facts are drawn from the parties' statements of material fact and responses to those statements of material fact, and note qualifications, denials, and objections where relevant.

In April 2019, Ms. Ericksen engaged MCKD to design and execute a renovation project for Plaintiffs' home ("the Project"). (Defs.' Supp'g S.M.F. ¶ 1.) Ms. Richardson was the individual authorized by MCKD to communicate with Plaintiffs regarding contracts for the Project. (Defs.' Supp'g S.M.F. ¶ 2.) Ms. Ericksen met with Ms. Richardson at MCKD's showroom. (Pls.' Opp. S.M.F. ¶ 3.) Ms. Richardson assured Ms. Ericksen that MCKD was the best value among its competitors and would not overspend on the Project.[1] (Pls.' Opp. S.M.F. ¶ 3.) After Ms. Ericksen explained her ideas for her kitchen remodel, Ms. Richardson told her that a budget of $150,000 would be appropriate. (Pls.' Opp. S.M.F. ¶ 4.) The Project's original budget of $150,000 was for a scope of work limited to the kitchen, half-bath, and mudroom. (Pls.' Opp. S.M.F. ¶ 5.)

Ms. Ericksen signed the nonrefundable retainer agreement and remodeling contract ("the Contract") with MCKD on April 11, 2019, in part based on Ms. Richardson's promises not to overspend the budget. (Pls.' Opp. S.M.F. ¶ 6.) Ms. Ericksen also relied on Ms. Richardson's expertise and assurances that MCKD was the best value among its competitors and that it would not overspend the budget. (Pls.' Opp. S.M.F. ¶ 10.)

The Contract states: "It is not unusual for clients to request modifications after seeing the design presented . . . . Often such modifications may result in costs that exceed a client's Target Budget." (Pls.' Opp. S.M.F. ¶ 7; Pls.' Ex. A at 3.) The Contract provides: "[I]f such modifications result in a price increase beyond that which Client wishes to spend, Client acknowledges Client's understanding that Client has the absolute right to choose a Target Budget based design rather than a subsequently modified design the cost of which exceeds the stated Target Budget." (Pls.' Opp. S.M.F. ¶ 8; Pls.' Ex. A, at 3.) The

---

[1] The portions of Tina Richardson's Affidavit cited by Defendants do not directly support Defendants' qualification, so the fact is deemed admitted without qualification.

Contract also provides: "Client has the right to forego any requested changes that have caused an increase in the budget." (Pls.' Opp. S.M.F. ¶ 9; Pls.' Ex. A, at 1.)

Throughout the spring and summer of 2019, Plaintiffs made advance payments to Defendants. (Pls.' Opp. S.M.F. ¶ 15.) By the end of May 2019, Ms. Ericksen agreed to an increased scope of work and a revised budget of $200,000 for the Project. (Pls.' Opp. S.M.F. ¶ 11.) Later, Plaintiffs rescinded at least some of these modifications and made other reductions to the scope of the Project. (Pls.' Opp. S.M.F. ¶ 12; Defs.' Resp. to Pls.' Opp. S.M.F. ¶ 12.) The parties dispute the timing of these reductions and whether they were significant enough to offset the earlier increases and costs already incurred. (Pls.' Opp. S.M.F. ¶¶ 12, 13; Defs.' Resp. to Pls.' Opp. S.M.F. ¶ 12.)

Ms. Ericksen met with Ms. Richardson on August 8, 2019, to review the reductions in scope and changes in cost.[2] (Pls.' Opp. S.M.F. ¶ 16.) At the meeting, Ms. Richardson told Ms. Ericksen to "trust the process," and gave Ms. Ericksen information she requested about the process. (Pls.' Opp. S.M.F. ¶¶ 18, 20; Defs.' Resp. to Pls.' Opp. S.M.F. ¶ 20.) Ms. Ericksen relied on these assurances and did trust Ms. Richardson.[3] (Pls.' Opp. S.M.F. ¶ 21.) Ms. Ericksen also trusted and relied on Defendants to reconcile the Project's cost with the reduced scope of work. (Pls.' Opp. S.M.F. ¶¶ 14, 22.)

On September 27, 2019, Plaintiffs further reduced the scope by canceling all work in the mudroom. (Pls.' Opp. S.M.F. ¶ 24.) Plaintiffs again relied on Defendants' promises to account for this reduction in the Project's final cost. (Pls.' Opp. S.M.F. ¶ 24.)

---

[2] Paragraphs 16, 25, 28, and 42 of Plaintiffs' Statement of Material Facts are deemed admitted because Defendants failed to support their qualifications with any citation to the record.
[3] Contrary to Defendants' objections to paragraphs 21 through 24 of Plaintiffs' Opposing Statement of Material Fact, the subjective motivations or state of mind of an affiant are a proper subject of an affidavit and statement of material fact, even if the affiant is not disinterested. *See Stanley v. Hancock Cnty. Comm'rs*, 2004 ME 157, ¶¶ 18-19, 864 A.2d 169. These statements are deemed admitted because Defendants failed to properly controvert them.

In November 2019, Plaintiffs requested another meeting with Ms. Richardson to address concerns over the pricing of the Project and the reduced scope of work. (Pls.' Opp. S.M.F. ¶ 27.) During the November 2019 meeting, Ms. Richardson told Ms. Ericksen to "follow the process." (Pls.' Opp. S.M.F. ¶ 28.) MCKD refused to start work on the Project unless and until Plaintiffs made a payment of $59,167, which Plaintiffs paid to prevent Defendants from quitting the Project. (Pls.' Opp. S.M.F. ¶ 31.) A week later, Defendants demanded an additional $15,000, which Plaintiffs paid.[4] (Pls.' Opp. S.M.F. ¶ 32.)

In late November, Defendants presented Plaintiffs with a final demand for payment of $14,120. (Pls.' Opp. S.M.F. ¶ 33.) Plaintiffs refused to make this payment. (Pls.' Opp. S.M.F. ¶ 34.) In December 2019, Defendants refused to meet with Plaintiffs to discuss the Project and accounting.[5] (Pls.' Opp. S.M.F. ¶ 38.)

Ultimately, Defendants did not complete the Project. (Pls.' Opp. S.M.F. ¶¶ 39, 41.) The parties dispute whether Defendants "walked off" the Project or whether Plaintiffs refused to allow Defendants entry to the worksite to complete the Project. (Pls.' Opp. S.M.F. ¶ 34; Defs.' Resp. to Pls.' S.M.F ¶¶ 34, 39, 41.) Plaintiffs paid Defendants a total of $209,551.80. (Pls.' Opp. S.M.F. ¶ 44.) Although Plaintiffs partially paid for flooring, cabinetry, plumbing, labor, and stone material and installation, there is an outstanding balance of $14,120. (Pls.' Opp. S.M.F. ¶ 40; Defs.' Resp. to Pls.' Opp. S.M.F. ¶ 40.)

The parties dispute whether the reductions in the scope of work were accounted for in the Project budget.[6] (Pls.' Opp. S.M.F. ¶ 36; Defs.' Resp. to Pls.' Opp. S.M.F. ¶ 36.)

---

[4] The portions of the record cited by Defendant do not directly support their denial of Plaintiffs' Statement of Material Fact. It is deemed admitted.
[5] Defendants failed to properly controvert this statement. It is deemed admitted.
[6] Paragraph 37 of Plaintiffs' Statement of Material Fact is not admitted because the portion of the record to which it cites appears not to be based on personal knowledge.

The parties also dispute whether the scope of the final project included less work than the original design or whether the increases in budget and scope over the course of the Project offset the subsequent reductions. (Pls.' Opp. S.M.F. ¶ 26; Defs.' Resp. to Pls.' Opp. S.M.F. ¶ 26.)

Defendants state that neither Ms. Richardson nor any owner, employee, or agent of MCKD made any intentional misrepresentation to Plaintiffs regarding the Project. (Defs.' Supp'g S.M.F. ¶¶ 3-6.) Plaintiffs deny this statement and contend that Defendants promised to allow Plaintiffs to reduce the budget and urged Plaintiffs to "trust the process," but ultimately completed less work than was included in the $150,000 Target Budget at a cost of $209,551.80. (Pls.' Resp. to Defs.' Supp'g S.M.F. ¶¶ 3-6.)

## II. Summary Judgment Standard

A party is entitled to summary judgment when review of the parties' statements of material facts and the record to which the statements refer demonstrates that there is no genuine issue as to any material fact in dispute, and that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821. A contested fact is material if it could potentially affect the outcome of the case. *Dyer*, 2008 ME 106, ¶ 14, 951 A.2d 821. A genuine issue of material fact exists if the claimed fact would require a factfinder to "choose between competing versions of the truth." *Id.* (quoting *Farrington's Owners' Ass'n v. Conway Lake Resorts, Inc.*, 2005 ME 93, ¶ 9, 878 A.2d 504).

When deciding a motion for summary judgment, the court reviews the evidence in the light most favorable to the non-moving party. *Id.* The evidence offered in support of a genuine issue of material fact "need not be persuasive at that stage, but the evidence

must be sufficient to allow a factfinder to make a factual determination without speculating."[7] *Est. of Smith v. Cumberland County*, 2013 ME 13, ¶ 19, 60 A.3d 759.

## III. Discussion

### A. Count VI, Fraud

Defendants move for summary judgment on Plaintiffs' fraud claim. As the moving party, Defendants bear the burden of demonstrating that the summary judgment record does not establish a prima facie case of fraud. *Est. of Frost*, 2016 ME 132, ¶ 23, 146 A.3d 118.

To prevail on a fraud claim, a plaintiff must prove that a defendant made "(1) . . . a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or to refrain from acting in reliance on it, and (5) the other person justifiably relies on the representation as true and acts upon it to the damage of the plaintiff." *Cianchette v. Cianchette*, 2019 ME 87, ¶ 20, 209 A.3d 745 (quoting *Drilling & Blasting Rock Specialists, Inc. v. Rheaume*, 2016 ME 131, ¶ 17, 147 A.3d 824). Historically, a false promise to perform in the future did not constitute a false statement of a material fact. *See Shine v. Dodge*, 130 Me. 440, 443, 157 A. 318, 319 (1931).

In *Cianchette v. Cianchette*, however, the Law Court adopted a broader formulation of the rule, consistent with the Restatement (Second) of Torts: "One who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the

---

[7] Each party's statements must include a reference to the record where "facts as would be admissible in evidence" may be found. M.R. Civ. P. 56(e). A party's opposing statement of material facts "must explicitly admit, deny or qualify facts by reference to each numbered paragraph, and a denial or qualification must be supported by a record citation." *Stanley*, 2004 ME 157, ¶ 13, 864 A.2d 169.

misrepresentation." 2019 ME 87, ¶ 23, 209 A.3d 745 (quoting Restatement (Second) of Torts § 525 (Am. L. Inst. 1977)). Thus, "fact" includes one's "state of mind, such as the entertaining of an intention." *Id.* ¶ 25 (quoting Restatement (Second) of Torts § 525 cmt. d). The Law Court emphasized, however, that a false representation of an intention to perform under a contract is actionable as a tort only when "the intent to not perform [is] present *at the time* the parties are entering into the contract." *Id.* ¶ 26.

Plaintiffs argue that the summary judgment record establishes that Defendants "committed fraud when: (1) they induced [Plaintiffs] to enter into the Contract on the false material promise which provided for the right to downsize the Project's scope of work to reduce costs, and (2) when, in response to [Plaintiffs'] concerns that those contractual promises were not being honored [Ms.] Richardson repeatedly told Ms. Ericksen to 'trust' her and 'trust the process,' obviously indicating that [] Defendants would fully reconcile the reduced scope with cost, and induced [Plaintiffs] to continue to make payments." (Pls.' Opp'n to Defs.' Mot. Partial Summ. J. 6-7.)

Under the rule adopted in *Cianchette*, a false promise to allow Plaintiffs to reduce costs by reducing the scope of work could constitute a fraudulent misrepresentation only if Defendants intended not to honor the promise when they entered into the Contract. There is no evidence in the record from which a factfinder could reasonably find the existence of such an intent without speculating. *See Beaulieu v. Aube Corp.*, 2002 ME 79, ¶ 31, 796 A.2d 683 ("When there is so little evidence tending to show a critical element of a plaintiff's claim that the jury would have to speculate in order to return a verdict for the plaintiff, a defendant is entitled to a summary judgment.").

Similarly, Ms. Richardson's statements that Plaintiffs should "trust the process" in response to Plaintiffs' concerns about the accounting of reductions may constitute fraud

under the broader rule only if Ms. Richardson intended not to account for the reductions when she made these statements. Again, there is no evidence of such an intent.

In sum, Defendants have met their burden of establishing that the summary judgment record is devoid of evidence of at least one element of fraud and that there are no genuine disputes of any material fact.

## B. Attorney's Fees

Defendants request an award of attorney's fees incurred in defending against Plaintiffs' fraud claim. M.R. Civ. P. 11(a) provides the Court with discretion to award reasonable expenses, including attorney's fees, if a pleading is signed with intent to defeat the purpose of the rule. The Court is not persuaded that Plaintiffs' fraud claim was frivolous or brought in bad faith. Accordingly, Defendants' request is denied at this time.

## IV. Conclusion

For the foregoing reasons, Defendants are entitled to summary judgment on Plaintiffs' fraud claim.

The entry is:

Defendants' Motion for Partial Summary Judgment is GRANTED. Summary judgment is entered in favor of Defendants on Count VI of Plaintiffs' First Amended Complaint. Defendants' request for attorney's fees is DENIED.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: 9/20/2022

Mary Gay Kennedy, Justice
Maine Superior Court

(

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-2021-190

JOHN ERICKSEN and KATHRYN
ERICKSEN,

    Plaintiffs,

v.

MAINE COAST KITCHEN
DESIGN, INC. and TINA
RICHARDSON,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER ON PLAINTIFFS' MOTION
FOR LEAVE TO AMEND
COMPLAINT**

REC'D CUMB CLERKS OFC
JUL 28 '22 PM4:06

This matter is before the Court on Plaintiffs John and Kathryn Ericksen's ("Plaintiffs") Motion for Leave to Amend Complaint. Defendants Maine Coast Kitchen Design, Inc. ("MCKD") and Tina Richardson oppose the motion. For the following reasons, the Court grants Plaintiffs' Motion for Leave to Amend Complaint.

M.R. Civ. P. 15(a) provides that leave to amend "shall be freely given when justice so requires." Undue delay, bad faith, undue prejudice, and futility of amendment are grounds for denial of a motion to amend. *Montgomery v. Eaton Peabody, LLP*, 2016 ME 44, ¶ 13, 135 A.3d 106.

The Court's scheduling order provides for a June 2, 2022 deadline for amendment of the pleadings. Plaintiffs filed the pending motion on June 2, 2022. Plaintiffs seek leave to add an eighth count for violation of the Unfair Trade Practices Act, 5 M.R.S. §§ 205-A to 213 ("UTPA"), to their Complaint. The existing counts of their Complaint concern a construction contract for renovations to be performed in Plaintiffs' home by MCKD, and alleged breaches of that contract.

Defendants contend that Plaintiffs have failed to offer adequate justification for the timing of the proposed amendment. (Defs.' Opp'n 1.) Plaintiffs need not necessarily provide an explicit justification for the timing, unless it would otherwise appear that they are acting in bad faith or for delay. Here, the timing is explained at least in part by the fact that Plaintiffs issued a settlement offer, as required by 5 M.R.S. § 213(1-A), on April 12, 2022. The pending motion was, therefore, filed shortly after the expiration of UTPA's thirty-day settlement period. *See* 5 M.R.S. § 213(1-A). Defendants have not informed the Court of any other facts suggesting bad faith, and none are apparent from the motion itself.

Defendants further argue that granting the motion would unduly prejudice them because "the Parties have engaged in significant discovery tailored to existing claims." (Defs.' Opp'n 2.) However, as Plaintiffs emphasize, the UTPA claim arises from the same set of operative facts as Plaintiffs' existing claims. Moreover, the current scheduling order sets a discovery deadline of October 2, 2022. Although Defendants suggest that they may need to reopen the deposition of Kathryn Ericksen and that additional written discovery requests may be served, this does not rise to undue prejudice. *See Montgomery*, 2016 ME 44, ¶ 14, 135 A.3d 106 (affirming denial of motion to amend on undue delay and undue prejudice grounds where the proposed third amended complaint was filed over three years after the original complaint and would have "completely change[d] the nature of the malpractice case"); *Drinkwater v. Patten Realty Corp.*, 563 A2d 772, 778 (Me. 1989) (affirming denial of motion to amend on undue prejudice grounds where the motion was filed more than three years after commencement of the action and only five days before scheduled trial date).

In sum, no grounds exist for denial of the pending motion. Accordingly, the Court grants Plaintiffs' Motion for Leave to Amend Complaint.

The entry is:

Plaintiffs John and Kathryn Ericksen's Motion for Leave to Amend Complaint is GRANTED. Plaintiffs' First Amended Complaint, attached as Exhibit A to the Motion for Leave to Amend Complaint, is hereby accepted. Defendants shall answer Plaintiffs' First Amended Complaint within 10 days of the date that this Order is docketed.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: ___7/28/2022___

_____
Mary Gay Kennedy, Justice
Maine Superior Court

JOHN ERICKSEN and )
KATHRYN ERICKSEN, )
                    )
      Plaintiffs, )
                    )
v.                )
                    )
MAINE COAST KITCHEN )
DESIGN, INC. and TINA )
RICHARDSON,      

      Defendants.

**ORDER ON DEFENDANT'S MOTION TO
DISMISS AND COMPEL ARBITRATION
AND/OR STAY PENDING ARBITRATION**

REC'D CUMB CLERKS OFC
SEP 27 '21 PM1:51

This matter is before the court on Defendants, Maine Coast Kitchen Design, Inc.

("MCKD") and Tina Richardson's, Motion to Dismiss and Compel Arbitration and/or

Stay Pending Arbitration. After due consideration, Defendants' Motion is denied.

## I. Factual Background

This action arises from a project to renovate Plaintiffs, John and Kathryn

Ericksen's, home at 2 Gilman Road Extension, Standish, Maine ("the Project"). (Compl.

¶¶ 1, 2.) MCKD is a Maine corporation with its principal place of business at 17 Little

Wing Lane, Gorham, Maine. (Compl. ¶ 10.) Defendant Richardson is the owner and

president of MCKD. (Compl. ¶ 11.) In April 2019, Plaintiffs and MCKD entered into a

contract for completion of the Project ("the Contract"). (Compl. ¶ 14.) Amid a payment

dispute, MCKD walked off the Project prior to completion. (Compl. ¶¶ 59, 61-63, 71.)

Paragraph 10(e) of the Contract ("the Arbitration Clause") provides that:

> In the event that a dispute should subsequently arise between the Parties
> respecting this agreement, each of the Parties agrees to submit such dispute to
> mediation by a neutral in Cumberland County, Maine; and in the event that such
> dispute cannot be resolved during such mediation, each of the Parties agrees to
> submit the dispute to binding arbitration by a mutually agreeable arbitrator and
> heard and decided under the rules of the American Arbitration Association, and

that the cost of such binding arbitration, including reasonable attorney's fees and the prevailing party's costs of the unsuccessful mediation, shall be borne by the non-prevailing party as determined by the arbitrator; and, in the event that the Parties cannot mutually agree on an arbitrator, each shall initially bear the expense to designate an arbitrator, and those two arbitrators shall designate the arbitrator who will hear and decide the dispute, the costs of which shall be reimbursed to the prevailing party as part of the costs of arbitration.

(Pl.'s Ex. A, at 5.) Pursuant to that provision, the parties engaged in mediation on July 12, 2020. (Compl. ¶ 73.) On September 10, 2020, Plaintiffs served a demand for arbitration on counsel for Defendants. (Compl. ¶ 74.) Defendants did not respond to the Demand for Arbitration. (Compl. ¶ 76.)

On September 23, 2020, Plaintiffs filed a Demand for Arbitration with the American Arbitration Association ("AAA") and paid the entire filing fee. (Compl. ¶ 77.) AAA opened an arbitration matter (case no. 01-20-0014-9981) and scheduled a case management conference for October 27, 2020. (Compl. ¶¶ 80, 81.) Defendants' counsel was served with the AAA Demand for Arbitration and provided with notice of the case management conference. (Compl. ¶¶ 79, 82.) Defendants did not appear at the case management conference. (Compl. ¶ 83.) On October 30, 2020, AAA sought Defendants' position on selection of an arbitrator. (Compl. ¶ 85.) Each party designated their preferred arbitrator, but the parties failed to agree on an arbitrator. (Compl. ¶ 86.)

Pursuant to the Arbitration Clause, Plaintiffs then designated Jerrol Crouter to work with Defendant's designated arbitrator to select the arbitrator who would ultimately resolve the dispute. (Compl. ¶ 87.) Despite AAA's attempts to reach Defendants on the matter, Defendants failed to designate an arbitrator as required by the Arbitration Clause. (Compl. ¶¶ 88, 89.)

After Defendants failed to respond to AAA's correspondence, Plaintiffs requested a stay of the Arbitration. (Compl. ¶ 91.) AAA contacted Defendants' counsel on May 10,

2021, regarding their position on the requested stay. (Compl. ¶ 92.) Defendants did not promptly respond. (Compl. ¶ 93.)

Plaintiffs then filed the Complaint in this action on May 17, 2021. Defendants have filed a Motion to Dismiss and Compel Arbitration and/or Stay Pending Arbitration. Plaintiffs argue in their Opposition that Defendants have waived their rights to arbitrate and that the court should deny Defendants' Motion on that basis. If the court compels the parties to arbitrate, then Plaintiffs request that the court stay this action and award Plaintiffs attorney fees in connection with filing the Complaint.

## II. Motion to Compel Arbitration Standard

When a contract involving interstate commerce contains a mandatory arbitration provision, the Federal Arbitration Act governs, and ordinarily preempts state law. 9 U.S.C. § 2; *Stenzel v. Dell, Inc.*, 2005 ME 37, ¶ 7, 870 A.2d 133. "In deciding whether an arbitration clause is enforceable in the first place, however, courts apply state contract law principles." *Id.*; *see Perry v. Thomas*, 482 U.S. 483, 493 n.9 (1987) ("[S]tate law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally").

"Maine has a broad presumption favoring substantive arbitrability." *Roosa v. Tillotson*, 1997 ME 121, ¶ 3, 695 A.2d 1196. Accordingly, a court will generally compel arbitration "if (1) the parties have generally agreed to arbitrate disputes, and (2) the party seeking arbitration presents a claim that, on its face, is governed by the arbitration agreement." *Id.* However, Maine's Uniform Arbitration Act[1] provides that agreements

---

[1] Maine courts may use case law interpreting the Federal Arbitration Act to guide their interpretation of Maine's Uniform Arbitration Act's similar provisions. *See HL 1 LLC v. Riverwalk, LLC*, 2011 ME 29, ¶ 22, 15 A.3d 725.

to arbitrate may be nullified "upon such grounds as exist at law or in equity for the revocation of any contract." 14 M.R.S. § 5927 (2021); *Snow v. Bernstein*, 2017 ME 239, ¶ 10, 176 A.3d 729.

## III. Discussion

### A. Waiver of Arbitral Rights

Contractual rights to arbitrate may be waived expressly or impliedly. *Joca-Roca Real Estate, LLC v. Brennan*, 772 F.3d 945, 948 (1st Cir. 2014). A party may impliedly waive its contractual right to arbitrate by "undertaking a course of action inconsistent with its present insistence" on arbitration, if prejudice to an opposing party results. *Saga Commc'ns of New England, Inc. v. Voornas*, 2000 ME 156, ¶ 12, 756 A.2d 954. For example, a party who has litigated substantial issues going to the merits of arbitrable claims has likely waived its right to arbitrate. *See id.* Waiver is not to be lightly inferred and courts must resolve doubts in favor of arbitration. *Id.* ¶ 11.

In addition to conduct that implies waiver, a majority of courts require a showing of prejudice to find waiver. *See id.* ¶ 16. Prejudice exists when a party delays invoking the right to arbitrate and thereby causes unfair damage to an opposing party's legal position or causes an opposing party to incur unnecessary delay or expense. *Id.* ¶ 17. Neither delay alone nor expenses that would also have been incurred in the course of arbitration is sufficient to show prejudice. *Id.* However, prejudice may be found where a party's conduct suggests a "deliberate strategy unilaterally designed to delay the arbitration proceedings" and an opposing party has incurred any unnecessary expenses as a result. *Tyco Int'l (U.S.) Ltd. v. Swartz*, 422 F.3d 41, 46 (1st Cir. 2005).

The parties do not dispute the validity or applicability of the Arbitration Clause. Rather, Plaintiffs argue that this Court should not enforce the Arbitration Clause because Defendants have waived their right to arbitrate under the Contract. Defendants argue

Page 4 of 6

that (1) they have not, by their conduct, waived the Arbitration Clause and (2) no prejudice has or will result to Plaintiffs if the parties are compelled to arbitrate this matter.

Unlike the majority of cases in which Maine and federal courts have found waiver, Defendants did not insist on engaging in litigation for a substantial period before invoking the right to arbitration. Nevertheless, Defendants have engaged in conduct inconsistent with their present insistence on arbitration by failing to meaningfully participate in the arbitration process prior to the filing of the Complaint. *See id.* at 46 ("Swartz should not be allowed to reject the Tyco demand for arbitration, stand idle, then submit a motion to compel arbitration after Tyco has been required to commence a court proceeding . . . .").

The delay endured by Plaintiffs, as well as the expenses incurred in filing the Complaint and in requesting a stay of arbitration, would not have been necessary but for Defendants' failure to participate in the arbitration process. In light of Defendants' dilatory conduct, the fact that compelling arbitration now would cause Plaintiffs to be "out" its expenses of filing the Complaint demonstrates prejudice. *See Stanley v. A Better Way Wholesale Autos, Inc.*, No. 17-1215, 2018 U.S. Dist. LEXIS 137645, at *18-19 (D. Conn. Aug. 15, 2018) ("Stanley has shown prejudice due to excessive cost and time delay based on those costs she incurred resulting from ABW's refusal to participate in the AAA arbitration." (quotations omitted)). Thus, Defendants have waived their arbitral rights.

**IV. Conclusion**

For the foregoing reasons, Defendants have waived their contractual rights to arbitrate. Accordingly, the Court denies Defendants' Motion.

The entry is:

Defendants' Motion to Dismiss and Compel Arbitration and/or Stay Pending Arbitration is DENIED.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: _9/22/2021_

_____
MaryGay Kennedy, Justice
Maine Superior Court